## Smith *against* Lewis.

THIS cause came before the court on a writ of *error* from the *Dutchess* common pleas.

The declaration in this case, in the court below, stated, that the defendant brought an action of trespass on the case against the plaintiff and four other persons, at *Fairfield*, in the state of *Connecticut;* that the action was commenced by a writ of attachment, dated the 4th day of *April*, 1799, and made returnable in *Fairfield* county court, on the 3d *Tuesday* of *April*, 1799, and which writ of attachment contained a declaration, in substance, as follows: That at *Brookfield*, on the 26th day of *January*, 1796, the defendants affirmed unto the plaintiff, *Lewis*, that *Austin Nichols*, one of the said defendants, was the rightful owner in fee, of 45,000 acres of land in *Virginia*, and described by metes and bounds. That the said *Austin Nichols* offered the same for sale; that he and the other defendants well knowing that the said *Austin* was not the owner of the said tract, and that the same was of no value, &c. did conspire to induce the plaintiff to buy a part of the said tract, at 25 cents per acre, and with intent to defraud the plaintiff, and to divide the profits among themselves. That the defendants did, for that purpose, agree

*Marginal note:*

NEW-YORK,
May, 1808.

Smith
v.
Lewis.

No action will lie against a person in this state for suborning a witness to swear falsely in a cause in another state, whereby a judgment was given against the defendant in that state, contrary to the truth and justice of the case.

severally, to represent to the plaintiff, that the said *Austin* was the owner, and that the said land was of an excellent quality, &c. That the defendants, for the purposes afore-said, did agree that *Benjamin Bostwick*, another of the defendants, should appear to be the purshaser of one fourth, at the price aforesaid. That the defendants did also agree, that *Aaron Gregory*, one of the defendants, should apply to the plaintiff to be let in for a small part of the purchase, &c. and the plaintiff averred, that the defendants executed their purposes, &c. and that the plaintiff, by means of the fraud practised upon him by the several defendants' conspiring together, did, on the 12th of *February*, 1796, at *Newtown*, purchase of the said *Austin*, one fourth of the tract, and did pay to him 2,812 dollars 25 cents for the same, and that the defendants divided the same ; and the plaintiff averred, that the said *Austin* had no title ; and that the said tract was mountainous and good for nothing ; and the defendants all well knew the same, and that all their said allegations were false ; by all which frauds he, the said *Walker Lewis* was damnified to 4,900 dollars, &c.

The declaration in the present suit further stated, that the said attachment was duly served on *Smith* and the other defendants, and returned, and the action entered in court. That the suit was legally removed into the superior court of that state, and the several defendants in the superior court, at *Fairfield*, on the 2d *Tuesday* in *January*, 1802, except *Austin Nichols* who was defaulted, pleaded the general issue, not guilty. That the cause was tried by a jury who found a verdict for the plaintiff, *Lewis*, and assessed his damages to 3,860 dollars 90 cents, and judgment was rendered thereon. That an execution issued the 29th *July*, 1802, and the real estate of *Smith*, (the now plaintiff,) was seized and set off in part payment of the judgment, to the amount of 808 dollars 86 cents. The declaration further stated, that all the said proceedings, in the said suit, were regular, but that the said *Lewis*, (the now defendant,) in order to prove his action on the said trial, did, in *Luzerne* county, in *Pennsylvania*, corruptly suborn one *Ste-*

*phen Burritt*, to make a false deposition, on the 10th day of *July*, 1801, which deposition was read on the said trial ; that this deposition went to support fully, the whole allegation of fraud in the declaration. The plaintiff then averred, that the said *Burritt*, in making the said deposition, was guilty of wilful and corrupt perjury ; and that the present defendant well knew it to be false when he procured it, and when he offered it in evidence, &c. That the deposition was procured and read according to the laws of *Connecticut*, but that the present plaintiff, and the other defendants had no knowledge of it, or its contents, until the same was read to the jury, and so were wholly unprepared to meet it ; that the said *Walker* made *Azor Ruggles* a party to the suit for the sole purpose of preventing him from being a witness for the defendants ; and that the said *Azor* would have disproved the contents of the said deposition ; that the court and jury relied upon the deposition, as material testimony produced upon the trial ; that the plaintiff, and the other defendants, were not guilty of any such combination or fraud, &c. and that the jury were wholly deceived and misled by the said deposition ; and that by this fraudulent and corrupt conduct of the defendant, the plaintiff hath sustained damages to 10,000 dollars, &c.

To this declaration the defendant below demurred, and the plaintiff joined in demurrer. The court below, having given judgment for the defendant, the plaintiff brought his writ of error to this court. There were two grounds of demurrer. 1. That the declaration did not contain a sufficient cause of action. 2. There were two separate and distinct causes of action set forth.

The court having decided on the first ground, it is unnecessary to take notice of the second.

*P. Ruggles*, for the plaintiff in error. There can be no doubt that the plaintiff has sustained a serious injury by the fraudulent conduct of the defendant ; and the only question is, whether the law affords him any remedy for

that injury.   The plaintiff does not impeach the judgment of the court in *Connecticut*, which, on the evidence as it appeared before them, was no doubt correct; but he alleges that it was obtained by perjury, and that the defendant ought to make reparation for the damages caused by his malpractice and deceit in procuring that judgment. The merits of the judgment are no more called in question in this case, than they were in that of *Moses* v. *Macfarlane*,* cited by the counsel for the defendant on the argument in the court below.   Lord *Mansfield*, in that case, observes, " the ground of the action is not that the judgment was wrong, but that (for a reason which the plaintiff could not avail himself of against that judgment) the defendant ought not, in justice, to keep the money."   " Money may be recovered by a right and legal judgment, and yet the iniquity of keeping that money may be manifest, upon grounds which could not be used by way of defence against that judgment."   His lordship puts several cases, not so strong as the present. " Suppose," says he, " an indorsee of a promissory note, having received payment from the drawer (or maker) of it, sues and recovers the same money from the indorsor, who knew nothing of the payment.   Suppose a man recovers upon a policy for a ship, presumed to be lost, which afterwards comes home, or upon the life of a man, presumed to be dead, who afterwards appears; or upon the representation of a risk deemed to be fair, which comes out afterwards to be grossly fraudulent."   In all those cases the former judgment of the court was shown, else no cause of action could be made to appear.   If the party in those instances was not bound to be prepared against facts which must frequently happen in the course of business, how is he to come prepared against perjury, especially when the plaintiff had deprived him of the means of detection ?   But in the case of *Hanford* v. *Pennoyer*,† decided in the superior court of the state of *Connecticut*, the precise point in question arose.   The case was shortly this.   *Pennoyer* brought his action

* 2 *Burr.* 1005.

† The counsel read a manuscript copy of the record, which contained the case and the reasons of the judgment, in *August*, 1802.

against *Hanford* in the court of Common Pleas, and stated in his declaration, " that *Hanford* had before sued him in trespass *quare clausum fregit*, before a justice, and that he called one *S. H.* as a witness, who swore falsely and corruptly, whereby judgment was rendered against him, (*Pennoyer*) and for that false oath and the damages he had sustained, he brought his suit," &c. A verdict was found for the plaintiff for 70 dollars damages, and a motion in arrest of judgment was overruled, and judgment rendered for the plaintiff. *Hanford* brought a writ of error to the superior court, who affirmed the judgment of the common pleas ; who, in giving their reasons, observed, " that it was a fundamental principle of law, that for every injury there was a remedy ; that the plaintiff in the court below had his right taken from him by perjury, and it was no answer to say, it was by the judgment that the party is aggrieved, for the judgment was obtained by perjury ; nor that the statute has provided a punishment for perjury, for the statute does not take away the common law right.* It is not true that the judgment is attacked by this action, or its legality and binding force called in question ; the action is founded on the very principle that the judgment was properly rendered, and binding on the party. It is by means of the judgment so obtained by perjury, that the party is subject to damage ; and notwithstanding a recovery for the perjury, the judgment must remain in full force. It is no objection to this action, that the party aggrieved may get relief from the judgment by writ of error, or a new trial, for it must often happen, that no error appears on the record ; and the party aggrieved ought not to be put to the trouble and expense of a new trial ; nor run the risk of losing his evidence by the death or removal of witnesses."

Several analogous cases may also be found, in the *English* books. In *Skelhorn* v. *Harrison*,† where bail in an inferior court, had knowingly procured insufficient bail to be put in, on a *habeas corpus* in the cause, in the court

NEW-YORK,
May, 1808.

Smith
v.
Lewis.

* 2 *Wils.* 145.
3 *Burr.* 1419.
1 *Black. Rep.*
427. 1 *Com.*
*Dig.* 168. *Action on the case,*
(A.)

† *Cro. Eliz.*

\* *Cro. Eliz.*
618.

† *Cro. Eliz.*
793.

‡ *Cro. James,*
667.

§ *1 Lev.* 119.

¶ *1 Rol. Abr.*
100. pl. 1.

of *K. B.* it was held, that an action on the case would lie for the *falsity*. In *Baron* v. *Sleight*,\* which was an action on the case for deceitfully procuring a *scire facias* to be sued out, and two *nihils* returned, against a person who was not bail, in which judgment was rendered against him, and execution issued, on a motion in arrest of judgment, the court held the action to be maintainable, because the judgment was obtained by fraud and covin, and to deceive the plaintiff. *Perren* v. *Budd* † was also an action on the case, for deceitfully procuring a *nil debet* to be entered in the name of the plaintiff, and though it was objected, that the entering of the *nil debet* was a judicial act, and therefore no action would lie, yet the court said, that the action was maintainable, for the procuring the *nil debet* to be entered was an abuse of the court, whereby the party had been injured.

So in *Steer* v. *Scoble & Pensent*,‡ which was an action on the case for maliciously and deceitfully prosecuting bail, knowing that the principal had surrendered in their discharge, it was moved in arrest of judgment, that such an action would not lie, because it was the act of the court to award the process, but the court gave judgment for the plaintiff, which on a writ of error, was afterwards affirmed. In *Coxe* v. *Smith*,§ the action was for making a false affidavit against the plaintiff, in consequence of which he was turned out of his office. After a verdict it was moved in arrest of judgment, on the ground that no action would lie for making a false oath ; but the court said, the action is not founded on the oath, which is only an inducement to the malicious procurement to have the plaintiff turned out of office, and the verdict having found that it was falsely and maliciously done, the plaintiff was entitled to judgment. In the case in *Rolles*,¶ " it was held, that if a man acknowledge a fine in my name, or acknowledge a judgment in an action in my name, of my land, this shall bind me for ever ; and therefore I may have a writ of deceit against him who acknowledged it." The novelty of the present ac-

tion furnishes no legal objection against it ;* and every
principle of justice is in its favour.

*Tallmadge*, contra.  The case of *Skelhorn* v. *Harrison*,
which has been cited, was overruled in the subsequent
case of *Eyres* v. *Sedgwick*,† which was an action for
making a false affidavit in chancery, by reason of which
the plaintiff was imprisoned, and put to great expense, and
it was held, that no such action would lie ; and the court,
in taking notice of the case of *Skelhorn* v. *Harrison* say,
that the suit was compromised, and no judgment given, it
being the better opinion that the action was not maintain-
able.    In *Dampton* v. *Sympson*,‡ it was expressly de-
cided, that an action on the case would not lie against a
person for perjury.   The case of *Moses* v. *Macfarlane*,
was, perhaps, correctly decided on the point in litigation
before the court ; but much of the reasoning of Lord
*Mansfield* in that case, has since been questioned and
overruled.§  Yet in that case Lord *Mansfield* said, " that
it was most clear, that the merits of a judgment can
never be overhaled by an original suit, either at law or
in equity ; and until the judgment is set aside or re-
versed, it is conclusive as to the subject-matter of it, to
all intents and purposes."   This suit is certainly an
attempt to overhale the judgment of the superior court
of the state of *Connecticut*.   Such an action is against the
settled principles and policy of the law.   If maintain-
able, there will be no end to litigation.   It will be again
trying the same cause which has already been regularly
tried and decided by a court of competent jurisdiction,
in which, if the plaintiff was aggrieved by a verdict, ob-
tained by surprise, or through imposition, he might have
obtained relief, by an application to the liberal discretion
of the court in granting new trials, or in a court of
equity.   The verdict can never be inquired into, in this
way, by a collateral suit.  The judgment of the court
must be considered as final and conclusive. *Res judi-
cata pro veritate accipitur.*¶   After judgment, the sub-

NEW-YORK,
May, 1808.

Smith
v.
Lewis.

* *Paisley* v.
*Freeman*, 3
*Term*, 63, 64.
2 *Wils.* 146.
† *Cro. Car.* 601.

‡ *Cro. Eliz.*
520.  See also
2 *Roll. Rep.*
195. 198.  2
*Anders.* 47.
*Hutton*, 11.
*Danv.* 195.  1
*Saund.* 131.  2
*Burr.* 810.  1
*Leo.* 107. *Kir-
by's Conn.
Rep.* 7.
§ 2 *Hen. Black.*
414, 415. *Eyre*,
Ch. J. 7 *Term*,
269.  2 *Esp.*
*Cas.* 546.  *E-
vans' Pothier on
Oblig.* vol. 2. p.
350.

¶ *Reg. Jur.*
207. *Dig. lib.*
50. *tit.* 17.

Smith
v.
Lewis.

* 4 *Term*, 432.
note.
† 7 *Mod.* 54.
1 *Term*, 717.
2 *Term*, 113.
*Trial of A. H.
Rowan.*
‡ *Tidd*, 811.
1 *Bos. & Pull.*
227.
§ *The King* v.
*Borten*, 4 *East*,
475.  *Rex* v.
*Eden*, 1 *Esp.
Cas.* 48. *Peake's
N. P.* 12.  2
*Vern.* 464.

ject-matter of controversy cannot be put in litigation a second time.*

. Again, it is too late, after a trial, to impeach the testimony of a witness.† Nor do courts ever grant new trials, on account of objections to the competency of witnesses discovered after a trial.‡ Where a person has recovered a judgment by means of the perjury of a witness, the party aggrieved may find relief in a court of equity, because he would be too late to obtain it in a court of law.§ In the case of *Page* v. *Camp*, decided in the superior court of the state of *Connecticut*, the court were of opinion, that an action on the case for perjury, if maintainable, would not lie until after the conviction of the witness; and that a judgment of one court could never be examined by another court of the same jurisdiction, as it would, in fact, be trying the cause a second time.

*Ruggles*, in reply. That a new trial will not be granted on the ground of objections to the competency of a witness, or for the falsehood of his evidence, discovered after the trial, is an additional reason for supporting this action, for otherwise the party would be remediless. In

¶ 1 *Esp. Cas.*
98.

the case of *Merritt* v. *Hampton*,¶ the judgment was recovered on a *cognovit* given long after the receipt set up by *Merritt*, and was considered as a voluntary payment. When the judgment was given, *Merritt* had the means of defeating it in his hands, had the receipt been genuine which was denied. Wherever a former judgment is pleaded in bar to an action of *assumpsit*, the plaintiff avers that the claim was not inquired into on the former trial, though the pleadings would have admitted

** *Seddon* v. *Tu-
top,* 6 *Term*,
607.  *Hitchin*
v. *Campbell*, 3
*Wils.* 308. 2
*Wm. Black.*
327. See also
*Manny* v. *Har-
ris*, 2 *Johnson*,
24.

of such inquiry.** In all such cases, it is necessary to show, by proof, on what evidence the jury founded their verdict in the former suit.

. SPENCER, J. The declaration in this cause contains but one count ; it sets forth, minutely, a suit brought by the defendant against the plaintiff and others, in a court

of common pleas in the state of *Connecticut*, and after- NEW-YORK, wards removed to the superior court of that state, in May, 1808. which the defendant prevailed and obtained a judgment, Smith after a trial before a jury, and the payment of that judg- v. ment by the plaintiff. It is then alleged, that the defend- Lewis. ant, in order to prove the matters necessary to maintain his suit, unlawfully and corruptly, and with a view and design to deceive the court and jury, and to injure the plaintiff, procured one *Stephen Burritt* to commit wilful and corrupt perjury, by making a deposition altogether false, and known to be so by the defendant, and which was given in evidence on the trial ; on which evidence and no other, the defendant prevailed in the said suit; also alleging, that the defendant joined one *Azor Ruggles*, as a defendant in that suit, to prevent his testifying to the facts he knew in that cause, and that the truth might be sup- pressed ; that the said *Azor* could have disproved the falsehoods testified by the said *Burritt;* and that, but for the false deposition of *Burritt*, the jury would have found a verdict for the plaintiff and the others sued with him ; and that there was no evidence of any weight to maintain the said issue, except that of *Burritt.*

To this declaration the defendant demurred specially, insisting that distinct matters are alleged in one count, to wit, the subornation of *Burritt*, and the joining *Ruggles* in the suit, to prevent his being a witness. To this there was a joinder : and judgment was given for the defendant.

The questions presented are ; 1. Is it actionable to suborn a witness to bear false testimony, whereby a ver- dict is given contrary to the truth and justice of the case ?

2. Is the declaration defective in containing the dou- ble allegation, that the defendant did suborn *Burritt*, whereby the plaintiff lost his cause, and that he also joined *Ruggles* fraudulently, to prevent his being a witness, whereby *Burritt* could not be detected in his perjury ?

However just and reasonable it may appear, upon the first view of the proposition, that a man who has by per-

jury, injured another and subjected him to the unjust payment of a sum of money, should be answerable, yet on a nearer inspection, when the mischiefs resulting from upholding that proposition are considered, the conclusion will be, that it would be dangerous in the extreme to sustain this action.

First, however, as a point adjudicated ; the decisions, whenever the point has arisen, are uniformly against the maintenance of the action. The question arose in the case of *Dampton* v. *Sympson*,* whether the party committing perjury in falsely swearing on a trial, that a fountain of silver was worth only 180*l.* when it was worth 500*l.* was liable in an action, and it was held by all the judges, except one, that the action would not lie, and among other reasons not very conclusive, the court was influenced by its being totally unprecedented.

In the case of *Eyres* v. *Sedgwick*,† it became a question, whether a person who had made a false affidavit in chancery, whereby the plaintiff was imprisoned by the chancellor, was liable to an action for the injury, and it was held by all the judges, except *Houghton*, that to punish this perjury by an action on the case, under pretence of a false oath, should not be suffered ; and *Houghton*, who differed, admitted that if the defendant had come in by process of law as a witness, it had been otherwise, for then he would have been punishable by indictment ; but not in the case then before the court. *Dodcridge*, J. in giving his opinion says, that in the case of *Skelhorn* v. *Harrison*,‡ which was an action for putting in bad and false bail, to discharge other good bail, the better opinion was, that the action was not maintainable. The case of *Coxe* v. *Smith*,§ is not at variance with the cases cited, for there the affidavit, whereby the plaintiff was removed from office, was not considered as the *gist* of the action, but only inducement to prove the malicious intent.

These are all the cases which have been cited or met with, that bear on the question, and although they are all cases against the party committing the perjury, their ap-

* Cro. Eliz.
520.

† Cro. Jac. 601.

‡ Cro. Eliz.
714.

§ 1 Lev. 119.

plication cannot be doubted ; for if the very person who has committed the supposed injury is not answerable, surely the person procuring it will not be held amenable. According to the rule of Lord *Coke*, it is better to submit to a particular inconvenience, than introduce a general mischief which, in my opinion would be the case, were we to maintain this action. If a perjury has been committed, let the defendant who is alleged to have procured it, be punished according to the known law of the land, and not in a way altogether novel and unprecedented, nay, even against decisions. This case affords a sample of the danger of maintaining the action. *Ruggles* is alleged to have been made a party fraudulently, to prevent his being a witness, and most probably *Ruggles* is to be the witness to disprove the truth of *Burritt's* deposition. I do not mean to say any thing against him ; but it is obvious that he must feel strong inducements to retort on *Burritt* for having implicated him in the fraud. The old rule is the safest, that the parties must come prepared at the trial to vindicate themselves, and to detect the falsity of the testimony brought against them, if it be untrue ; or they must take their chance of obtaining a new trial, by showing that they were surprised, and that they have detected the imposition.

I confess that I should be afraid to make a precedent, that would be so productive of litigation, and that would open a door to so much perjury, as the one we are now called upon to establish.

The fraudulently joining *Ruggles* in the suit has not been pretended to be of itself a cause of action, and it becomes unnecessary to examine how far the declaration is bad on that account, since it is vicious in that part which contains the *gist* of the action. A decision of the superior court of *Connecticut* has been cited, to show that an action like this has been sustained ; though I respect the decisions of that court, I cannot yield my settled conviction to any unauthoritative adjudication on the subject.

My opinion, therefore is, that the judgment below ought to be affirmed.

KENT, Ch. J. This suit is an attempt to overhale the merits of the verdict and recovery in *Connecticut*. The defendant below recovered damages of the plaintiff, in that state, on a charge of fraud, in the sale of *Virginia* lands; and the plaintiff now alleges that there was no such fraud, and that the testimony which was produced, in support of the charge, was procured by the corrupt acts of the defendant. If this be not an effort to try over again the merits of the former recovery, I must be greatly mistaken in my view of the case. The injustice of the recovery appears to be the real *gravamen*. The declaration does, in substance, tell the defendant that he had obtained a verdict and judgment against the plaintiff, which he ought not to have done, whereby the defendant is injured, and claims a return of the money so unjustly recovered. " Shall the same judgment," says Ch. J. *Eyre*, in the case of *Philips* v. *Hunter*, (2 *H. Blacks.* 414.) " create a duty for the recoveror, upon which he may have an action of debt, and a duty against him, upon which an action will lie ? This goes beyond my comprehension." It would be against public policy and convenience; it would be productive of endless litigation, and it would be contrary to established precedent, to allow the losing party to try the cause over again in a counter suit, because he was not prepared to meet his adversary at the trial of the first suit. The general law of the land, and the rules of every superior court of competent jurisdiction, sufficiently provide against forcing a party to trial, without giving him a due opportunity to prepare for his defence, and cases of surprise and injustice are generally redressed by the discretionary power of the courts in setting aside verdicts. We are to intend that the judgment in *Connecticut* was fairly obtained in the regular course of justice, and it is conclusive, as to the subject-matter of it, until it be set aside or reversed, either by the same court, or by some other court having appellate jurisdiction. It never can be opened in a collateral action. It is as binding upon the parties here, as it is in that state; for foreign judgments

are never re-examined, unless the aid of our courts is asked to carry them into effect by a direct suit upon the judgment. The foreign judgment is then held to be only *prima facie* evidence of the demand; but when it comes in collaterally, or the defendant relies upon it under the *exceptio rei judicatæ*, it is then received as conclusive; this distinction is taken and stated by some of the most approved jurists on the law of nations. The general doctrine in *Moses* v. *Macfarlane*, (2 *Burr.* 1005.) has been strongly questioned, and deservedly shaken by subsequent decisions, and especially by the case of *Merrit* v. *Hampton*, (7 *Term*, 269.) but if that case was admitted to stand in full force, it would not apply, as the plaintiff was there allowed to recover back money adjudged to the defendant in the court of conscience, because from the nature of the jurisdiction below, the plaintiff could not avail himself of his legal defence; no such pretext is alleged as a ground of the suit in the case before us.

The case of *Hanford* v. *Pennoyer*, which was decided in the superior court of *Connecticut*, 1802, is also inapplicable; for the suit there was not against the party to the judgment, but against a third person, by means of whose fraud and perjury, the judgment was obtained; and even such a suit against a witness is, I apprehend, an innovation upon the *English* law, for it appears to have been frequently and directly denied by the *English* authorities. (*Damport* v. *Sympson*, *Cro.* E. 520. *Eyres* v. *Sedgwicke*, *Cro. J.* 601. *Harding* v. *Bodman*, *Hutton*, 11.)

I am accordingly of opinion, that the judgment below must be affirmed.

VAN NESS, J. declared himself to be of the same opinion.

YATES, J. not having heard the argument in the cause, gave no opinion.

Judgment affirmed.