# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 18
Marta Urias, &c. et al.,
   Appellants,
  v.
Daniel P. Buttafuoco &
Associates, PLLC, et al.,
   Respondents.

Daniel A. Zahn, for appellants
Ralph A. Catalano, for respondents.
Andrew Lavoott Bluestone, amicus curiae.

HALLIGAN, J.:

Judiciary Law § 487 provides that "[a]n attorney or counselor[ ] . . . guilty of any deceit or collusion, . . . with intent to deceive the court or any party[,] . . . forfeits to the party injured treble damages, to be recovered in a civil action." This appeal presents the

- 1 -

question of whether a Judiciary Law § 487 claim may be brought in a plenary civil action where a plaintiff alleges that attorney deceit led to an adverse judgment or order. Given the unique concerns addressed by this statute, we hold that such a plenary action lies. We nevertheless affirm the Appellate Division's order on alternative grounds.

I.

In 2005, Delfina Urias retained defendants Daniel P. Buttafuoco and Daniel P. Buttafuoco & Associates, PLLC[1] to represent her and her husband, Manuel Urias, in a medical malpractice action stemming from a surgery that left Mr. Urias in a coma. Because Mr. Urias was incapacitated, Buttafuoco obtained a guardianship order authorizing Ms. Urias to prosecute and settle the medical malpractice action on her husband's behalf, "subject to prior court approval of legal fees and settlement." Ms. Urias agreed to settle the action for $3.7 million. During an April 2, 2009 hearing on the proposed settlement, Ms. Urias expressly confirmed that she understood and consented to the terms of the settlement, which included a deduction of legal fees and expenses per her retainer agreement with Buttafuoco. That agreement reproduced the contingency fee schedule for medical malpractice lawsuits set forth in Judiciary Law § 474-a and stated that "expenses and disbursements for expert testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action" would be deducted

_____

[1] Both Daniel Buttafuoco and his eponymous law firm are hereinafter referred to as "Buttafuoco."

from the amount recovered. At the close of the hearing, the court stated that the matter was settled for $3.7 million, making no express reference to attorneys' fees.

A subsequent hearing in the medical malpractice action was held on July 20, 2009, both to address subsequent changes in the settlement terms not directly relevant here and to obtain approval for the legal fees, as required by the guardianship order. At that proceeding, which took place before Justice Baisley, Buttafuoco submitted an exhibit that set forth his proposed legal fees and expenses, and noted on the record that the fees "followed the schedule" set forth in Judiciary Law § 474-a. The exhibit also detailed how the fees were calculated with respect to each of the four defendants: by applying section 474-a's fee schedule, which establishes a sliding scale of permissible contingency fees that decreases as the total sum recovered increases, separately to the settlement contribution of each defendant, for a total award of $864,552. Justice Baisley approved the settlement terms and legal fees as presented, and Buttafuoco separately agreed to reduce the attorneys' fee to $710,000.

The guardianship order required that the guardianship court separately approve settlement terms and legal fees, and Ms. Urias retained another attorney, John Newman, to handle that process. Newman first petitioned for approval in September 2009. The guardianship court initially denied that request without prejudice, noting that "[s]ection 474-a of the Judiciary Law was used to calculate the legal fees based upon each individual defendant's settlement amount, which resulted in a greater legal fee than if the calculations had been based upon the total sum recovered." Accordingly, it directed that the trial court in the medical malpractice action revisit the issue of how the fees were calculated.

In seeking the requisite approval from Justice Baisley, Newman submitted the guardianship court's decision, the fee calculations previously provided to the medical malpractice court, and an affirmation from Buttafuoco. The affirmation explained Buttafuoco's position that because section 474-a instructs that the sliding fee scale be applied to a medical malpractice "claim or action" and the lawsuit involved four distinct causes of action against four defendants, it was proper to apply the scale separately to the settlement amounts from each of the four defendants. Justice Baisley stated that he was "satisfied the legal fees approved by the Court comport with the language and mandates of the statute" and approved the fee as previously calculated. The guardianship court thereafter approved the settlement.

In 2011, Ms. Urias sued Buttafuoco and Newman, claiming that Buttafuoco had deceived her and the trial court in the medical malpractice action about the legal fees they were entitled to by proffering an "illegal" and "improper" interpretation of section 474-a's fee schedule. The complaint alleged, in essence, that although the trial court had approved the fees in question, it had not done so "knowingly," and had instead "merely relied upon" Buttafuoco's representation that section 474-a authorized this amount. The complaint also cursorily alleged that Buttafuoco had charged "improper, duplicative and illegal expenses and disbursements" against the settlement sum. In addition to the five causes of action based on these allegations (a violation of Judiciary Law § 487, breach of fiduciary duty, breach of a retainer agreement, conversion, and fraud), the complaint included a legal malpractice claim against both Buttafuoco and Newman.

Buttafuoco moved for summary judgment, arguing that the first five causes of action were improper collateral attacks on the medical malpractice settlement that could only be pursued by a motion under CPLR 5015 to vacate the judgment in that underlying action. Alternatively, Buttafuoco argued that he was entitled to summary judgment on the section 487 claim because Ms. Urias had failed to establish that he engaged in any deceitful conduct within the meaning of the statute. In August 2017, Supreme Court granted summary judgment to Buttafuoco as to the first five causes of action, reasoning that each claim arose from Buttafuoco's representation in the underlying action, and "the remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment . . . not by another plenary action collaterally attacking that judgment."

The Appellate Division affirmed, agreeing with Supreme Court that Ms. Urias's sole remedy was to move under CPLR 5015 to vacate the underlying judgment. On that basis, the court affirmed dismissal of the first, fourth, and fifth causes of action (alleging a violation of Judiciary Law § 487, conversion of the settlement proceeds, and fraud, respectively), and affirmed dismissal of the second and third causes of action (alleging breach of fiduciary duty and breach of contract) as duplicative of the legal malpractice cause of action.[2]

---

[2] As to the sixth cause of action sounding in legal malpractice, Supreme Court held that triable issues of fact precluded summary judgment, and the Appellate Division affirmed. Ms. Urias subsequently withdrew that cause of action as against Buttafuoco, and Supreme Court granted Newman's motion for summary judgment in a February 2021 order that is not before us.

Following a February 2022 judgment dismissing the complaint, this Court granted plaintiff leave to appeal from that final judgment to bring up for review only the June 2019 Appellate Division order (*see* 39 NY3d 907; *Quain v Buzzetta Construction Corp.*, 69 NY2d 376 [1987]).[3]

## II.

We begin with the question of whether Judiciary Law § 487 permits a plenary action. We thus turn to the "plain language of the statute" as "the clearest indicator of legislative intent" (*Matter of T-Mobile Northeast, LLC v DeBellis*, 32 NY3d 594, 607 [2018]). Section 487 provides that:

"An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

---

[3] During the proceedings below, Ms. Urias appeared in both her personal capacity and as the guardian of Mr. Urias. While her motion for leave to appeal was pending before this Court, Mr. Urias passed away and the administrator of his estate, Marta Urias, substituted herself for Ms. Urias as representative of Mr. Urias. Although there are therefore two plaintiffs before us now, we use "plaintiff" throughout for simplicity.

This provision is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified" (*Amalfitano v Rosenberg*, 12 NY3d 8, 14 [2009]). Recognizing that "[o]ur legal system depends on the integrity of attorneys who fulfill the role of officers of the court, furthering its truth-seeking function," the statute creates a cause of action for attorney deceit that is distinct from common law fraud or legal malpractice (*Bill Birds, Inc. v Stein Law Firm, P.C.*, 35 NY3d 173, 178 [2020]). Given the importance of safeguarding the integrity of the judicial system, section 487 allows for both criminal liability and a civil remedy in the form of treble damages (*see id.* at 179).

We recognize, of course, that common law has long shielded a final judgment from collateral attack in a subsequent action (*see e.g. Smith v Lewis*, 3 Johns. 157, 168 [NY Sup Ct 1808] [Kent, Ch. J., concurring]; *Crouse v McVickar*, 207 NY 213, 219 [1912]). Although subsequent actions have been permitted for fraud that is extrinsic to the underlying proceeding (*see e.g. Mayor of City of New York v Brady*, 115 NY 599, 617 [1889]; *United States v Throckmorton*, 98 US 61, 68 [1878]), or part of a "larger fraudulent scheme" (*Newin Corp. v Hartford Acc. & Indem. Co.*, 37 NY2d 211, 217 [1975]), the interest in finality of judgments generally constrains a court's authority to revisit a final judgment in a collateral action (*see Crouse*, 207 NY at 219). Such a challenge may instead be brought under CPLR 5015, which authorizes "[t]he court which rendered a judgment or order" to "relieve a party from it upon such terms as may be just . . . upon the ground of[,]"

among others, "fraud, misrepresentation, or other misconduct of an adverse party" (CPLR 5015 [a] [3]).

Buttafuoco argues that allowing plaintiff to bring a section 487 claim as a plenary action would implicate these concerns. He correctly points out that, although Ms. Urias does not technically seek to vacate the orders of the medical malpractice court approving the fee award, she seeks to recoup the difference between the actual fee charged and the amount she contends was permissible under the fee schedule as a remedy for alleged deceit in procuring that award. Moreover, the conduct at issue is not extrinsic to the underlying medical malpractice action, and the claim for damages does not arise from allegations of a more extensive fraudulent scheme.

We conclude, however, that section 487 authorizes a plenary action for attorney deceit under these circumstances. The text of the statute allows recovery of treble damages "in a civil action" where "[a]n attorney . . . [i]s guilty of any deceit or collusion . . . with intent to deceive the court or any party." The phrase "in a civil action" is most naturally read to include a plenary action. Notably, the provision does not differentiate between an action that might undermine or undo a final judgment and one that does not, or between allegations of fraud that are intrinsic to the underlying action, as opposed to extrinsic. Interpreting the statute to permit a plenary action where the remedy would not entail undermining a final judgment (for example, when the deceit harms a prevailing party), but deny one where a final judgment could be impaired, would require us to rewrite the statute. That we cannot do.

Buttafuoco contends that Ms. Urias was relegated to bringing a motion to vacate under CPLR 5015. That path may well be available as a general matter,[4] but section 487 cannot be read to make CPLR 5015 the exclusive avenue here. Not only does the text of the provision suggest that a plenary action is available in all instances of attorney deceit, but section 487's long lineage also confirms that conclusion. The cause of action was descended from the first Statute of Westminster adopted in England in 1275, incorporated in New York's earliest common law, and first codified in this State in a 1787 statute that closely tracks the current provision (*see Melcher v Greenberg Traurig, LLP*, 23 NY3d 10, 14-15 [2014]; *Amalfitano*, 12 NY3d at 12). Its legislative history reflects a consistent view, taken over centuries, that attorney deceit in the course of litigation warrants substantial penalties—both criminal liability and treble damages. By comparison, CPLR 5015 offers a discretionary remedy that includes "restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal" (CPLR 5015 [d]). Such relief is markedly different from that authorized by section 487, and we decline to confine a plaintiff alleging attorney deceit to the sole option of proceeding under CPLR 5015.

We appreciate that it might be more efficient to require a plaintiff who either directly or effectively challenges a judgment to return to the court that issued it and seek vacatur

---

[4] We note that CPLR 5015 (a) (3) specifically authorizes vacatur upon the ground of "fraud, misrepresentation, or other misconduct of an *adverse party*" (emphasis added). Although Buttafuoco was Ms. Urias's attorney, not an adverse party, in the underlying action, a court may also vacate its own judgment for sufficient reason and in the interests of substantial justice" as an exercise of its "inherent discretionary power" (*Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]).

under CPLR 5015, and we note that transfer of a plenary action to the court that handled the underlying proceedings may be desirable where consistent with the CPLR's venue provisions. Nor do we take lightly the interest in preserving the finality of judgments. But the legislature has singled out the specific type of claim here—an allegation of attorney deceit on the court or a party—and determined that recovery of treble damages should be available in a civil action. We conclude that section 487 must be read to allow a plenary action for deceit, even where success on that claim might undermine a separate final judgment.

III.

Although a cause of action under section 487 lies, Buttafuoco is entitled to summary judgment on that claim. Viewing the facts in the light most favorable to the non-moving party, we conclude that Buttafuoco "established prima facie entitlement to judgment as a matter of law . . . by demonstrating that plaintiff[ ] failed to [sufficiently] allege that [he] engaged in deceit or collusion during the course of the underlying" medical malpractice action (*Bill Birds*, 35 NY3d at 179). In opposing summary judgment, "plaintiff[ ] failed to satisfy [her] burden to establish material, triable issues of fact" as to whether the defendants' representations about their fee calculations or litigation expenses amounted to false statements (*id.*). Accordingly, we affirm the Appellate Division order appealed from insofar as it affirmed the dismissal of the first cause of action.

Section 487 "guards against false statements by lawyers during litigation, rising to the level of intentional deceit or collusion; it was not designed to curtail attorneys' expressions of views concerning what the law is or should be, nor does it include merely

poor lawyering, negligent legal research or the giving of questionable legal advice" (*id.* at 180 n 3). Thus, we have previously made clear that "[t]he statute does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments" (*id.* at 180), or the provision of " 'false and untrue' legal advice to induce plaintiffs to bring an unnecessary lawsuit, motivated solely by the attorney's desire to collect a large fee" (*id.* at 178, quoting *Looff v Lawton*, 97 NY 478, 480 [1884]). Professional shortcomings or disagreements as to litigation strategy that do not involve intentional false statements in the context of litigation may sound in legal malpractice, but not in attorney deceit (*id.* at 180 n 3).

As plaintiff acknowledges, the crux of her attorney deceit claim is that Buttafuoco intentionally deceived Justice Baisley and Ms. Urias when he represented that the attorneys' fee calculations were in accordance with the applicable statutory fee schedule set forth in section 474-a. The disagreement between the parties as to the proper interpretation of that statute turns on whether the sliding scale should be applied to the total settlement amount, which would yield a lower attorneys' fee, or separately to each settlement reached with each of the four defendants, as was done here and which yields a higher total attorneys' fee. Plaintiff insists that the former interpretation is "patently obvious," and the latter is "outlandish," "bizarre," and "asinine." Buttafuoco counters that the plain language of the statute permits applying the fee schedule to "any claim or action," and that because the medical malpractice lawsuit involved four distinct causes of action against four defendants, he was permitted to calculate his fee separately as to each.

Plaintiff has not identified a material issue of fact as to whether Buttafuoco's representations that the fee calculations comport with the statutory schedule amounted to

false statements.  She insists that intent is a quintessential question of fact which precludes summary judgment; although that is true, there can be no claim for attorney deceit if there is no showing of a false statement.  Plaintiff concedes that Buttafuoco submitted to Justice Baisley an exhibit calculating the attorneys' fee as to each defendant, consistent with his interpretation of the fee schedule.  This Court has not had occasion to address whether section 474-a can be applied in this manner, and we do not opine on that question today.  However, Buttafuoco's calculations were supported by a legal argument that was not clearly foreclosed by any existing precedent.  Plaintiff appears to contend that Buttafuoco's representations were nonetheless deceitful because it was not clear that Justice Baisley actually read the exhibit submitted to the court, and plaintiff sought to subpoena Justice Baisley to explore this theory.  We cannot endorse this premise or conclude that it creates a material issue of fact.

To the extent plaintiff also alleges that Buttafuoco violated section 487 with respect to the deduction of litigation expenses from the settlement sum, she has similarly failed to establish a material, triable issue of fact.  Those expenses, like the fee calculations, were disclosed to the court when the settlement was approved, and plaintiff did not develop this theory before Supreme Court, the Appellate Division, or this Court, or establish a material issue of fact as to the propriety of the reported expenses.

In short, the record indicates that Buttafuoco's calculations were supported by a legal argument that was not clearly foreclosed by existing precedent, and he was transparent with the tribunal about how he arrived at those calculations.  Moreover, plaintiff

has raised no material issue of fact as to whether Buttafuoco made false statements or representations in doing so—an essential element of alleging attorney deceit.

\*        \*        \*

None of plaintiffs' remaining contentions provide any basis to reverse or modify the order appealed from.  The Appellate Division's dismissal of the second and third causes of action as duplicative of the legal malpractice cause of action was premised on a ground not raised before Supreme Court.  The Appellate Division thus is deemed to have reached the issue as a matter of discretion in the interest of justice, and that determination is not reviewable by this Court (*see Hecker v State of New York*, 20 NY3d 1087, 1087-1088 [2013], *rearg denied* 21 NY3d 987 [2013]).  The fourth and fifth causes of action (conversion of settlement proceeds and fraud) were properly dismissed as impermissible collateral attacks on a prior final judgment.

Accordingly, the judgment appealed from and the Appellate Division order insofar as brought up for review should be affirmed, with costs.

Judgment appealed from and Appellate Division order insofar as brought up for review, affirmed, with costs. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided March 19, 2024