SAMUEL COLGATE et al., Respondents, *v.* THE PENNSYLVANIA COMPANY, Appellant.

The effect of the statute (Chap. 326, Laws of 1858, as amended by chap. 353, Laws of 1859), prohibiting the delivery by a common carrier of property covered by a bill of lading, except upon surrender and cancellation of the bill, and authorizing the transfer of the property by indorsement of the bill, is to incorporate into every such instrument the statutory condition and make it an element of the contract, unless the case is brought within the exception of the statute (§ 5) by having the words " not negotiable " plainly written or stamped on the face of the bill.

The remedy of the transferee of a bill of lading where the carrier has delivered the property in violation of the statute is not confined to an action for damages given by the statute (§ 7, as amended by § 3, chap. 440, Laws of 1866), but he may maintain an action for the conversion of the property, and this although the delivery was by mistake, without evil intent.

Where, therefore, a bill of lading which ran to the consignee alone, but did not have the words " not negotiable " upon its face, was transferred by the consignee by indorsement, and thereafter the common carrier, without knowledge of the transfer, delivered the property to the consignee without production and cancellation of the bill of lading, *held,* that an action by the transferee against the carrier for conversion of the property was maintainable.

*Also held,* that proof of a custom to deliver property to the consignee without production of the bill of lading when it was " billed straight " to the consignee alone, was immaterial ; that the custom could not repeal the statute, or protect from a violation thereof.

*It seems* that the intent of the statute itself is not to dictate the form or character of the action, but that any one appropriate to the injury was contemplated.

(Argued March 8, 1886 ; decided April 13, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made February 27, 1884, modifying, and affirming as modified, a judgment in favor of plaintiff, entered upon the report of a referee.

This action was for the alleged conversion of one thousand two hundred and fifty barrels of cotton seed oil.

The oil had been delivered in different parcels to the defendant, as a carrier of property. It was received by it at Mem-

phis, Tennessee, and Little Rock, in the State of Arkansas, to be delivered at the city of New York to J. F. O'Shaughnessy, and bills of lading to that effect were made and delivered upon the receipt of the oil. These bills of lading were transferred to the plaintiffs by delivery, for moneys advanced by them to the consignee of the oil. Before notice was given to defendant of the transfer of the bills, or any demand was made for the oil, it was, under the authority and direction of O'Shaughnessy, the consignee, delivered for him to the Hudson Oil Works in South Brooklyn. The plaintiffs afterward demanded it from the defendant upon their bills of lading, but as no delivery could then be made, they failed to obtain the oil.

*William C. Gulliver* for appellant. Plaintiffs cannot recover unless they show conversion. (*Cook* v. *Warren*, 88 N. Y. 40.) There was no conversion by the defendant because the plaintiffs had no right of property or possession in the goods alleged to be converted. (Daniel on Neg. Inst., § 1731; *Bailey* v. *H. R. R. R. Co.*, 49 N. Y. 70, 77; *Dows* v. *Perrin*, 24 id. 325, 334; Hutchinson on Carriers, §§ 129, 414; *McCombie* v. *Spader*, 1 Hun, 193; *Hoyt* v. *Baker*, 15 Abb. [N. S.] 405; *Nicholson* v. *Connor*, 9 Daly, 275; *First Nat. Bk. of Green Bay* v. *Dearborn*, 115 Mass. 219.) There was no conversion because there was no wrongful dealing with the oil by the defendant. (*Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 157; *Bassett* v. *Spofford*, 45 N. Y. 387; *Muir* v. *N. Y., etc., S. S. Co.*, 50 id. 23; *Bank of Commerce* v. *Bissell*, 72 id. 615; *Merchants' Bank of Canada* v. *U. R. R. & T. Co.*, 69 id. 378; *Alderman* v. *E. R. R. Co.*, 115 Mass. 233; *City Bank* v. *R., W. & O. R. R. Co.*, 44 N. Y. 136, 141; *Farmers and Merchants' Bank* v. *E. Ry. Co.*, 72 id. 188; Abbott on Shipping [12th Eng. ed.], 277.) It is as a receipt that the bill of lading is chiefly used as a " *quasi* " negotiable instrument; while the carrier remains bound by it (and must have his liabilities restricted by it), as a contract. (Daniel on Neg. Inst., § 1728; 1 Parsons on Ship. and Adm. 190; *Blanchard* v. *Page*, 8 Gray, 281; Abbott on Shipping [12th Eng. ed.], 267; *The Thames*, 14

Wall. 98, 105, 107, 227–229; *Hazard* v. *Abel*, 15 Abb. [N. S.] 413; *Libby* v. *Ingalls*, 124 Mass. 503; *Forbes* v. *B. & L. R. R. Co.*, 133 id. 154, 157; *Ontario Bank* v. *N. J. Steamboat Co.*, 59 N. Y. 510; *Bailey* v. *H. R. R. R. Co.*, 49 id. 70; *Brandt* v. *Bowlby*, 2 B. & Ald. 932; Abbott on Shipping, 262.) The words "to order" or "assigns" are not insignificant, and are not carelessly used by the mercantile community. They are words, the presence or absence of which determines the negotiability of instruments. (Daniel on Neg. Inst., § 105; Parsons on Notes and Bills, 14, chap. 2, § 1; *Mechanics' Bank* v. *Stratton*, 3 Keyes, 365; *Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 158; 3 Kent's Com. *207; Daniel on Neg. Inst., § 1730; *City Bank* v. *R., W. & O. R. R. Co.*, 44 N. Y. 136; *Bank of Batavia* v. *N. Y., L. E. & W. R. R.*, 33 Hun, 589; *Robinson* v. *Memphis R. R. Co.*, 9 Fed. Rep. 129; *Blanchard* v. *Page*, 8 Gray, 281, 298; *Ontario Bank* v. *N. J. Steamboat Co.*, 59 N. Y. 50; *Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 154.) The consignee is presumptively the owner of the goods. (Hutchinson on Carriers, §§ 130, 136; *Bailey* v. *H. R. R. R. Co.*, 49 N. Y. 70; *Krulder* v. *Ellison*, 47 id. 37; Brown on Carriers, 219; Angell on Carriers, § 497; *Fitzhugh* v. *Wiman*, 9 N. Y. 562; *Everett* v. *Salters*, 15 Wend. 475; *Sweet* v. *Barney*, 23 N. Y. 335, 337; *Hotchkiss* v. *Artisans' Bk.*, 2 Abb. Ct. App. 403; *O'Dougherty* v. *Boston & W. R. R. Co.*, 1 T. & C. 477, 480.) A delivery to a consignee, or by his direction, is a good delivery. (Hutchinson on Carriers, § 130; *Sweet* v. *Barney*, 23 N. Y. 335; *Hotchkiss* v. *Artisans' Bk.*, 2 Abb. Ct. of App. 403; *O'Dougherty* v. *Boston & W. R. R. Co.*, 1 T. & C. 480; *Bailey* v. *H. R. R. R. Co.*, 49 N. Y. 70; *Bristol* v. *R. & S. Co.*, 9 Barb. 158; *Duff* v. *Budd*, 3 Brod. & Bing. 177; *Lond. & N. W. Ry.* v. *Bartlett*, 7 Hurlst. & Norm. 400; *Krulder* v. *Ellison*, 47 N. Y. 37.) The carrier will be liable for delivery to one who improperly holds the bill of lading. (Hutchinson on Carriers, § 129; *Dows* v. *Greene*, 24 N. Y. 638; *Bailey* v. *H. R. R. R. Co.*, 49 id. 70.) The consignor and consignee are bound to know, and are by law presumed to know, the terms of the bill of lading, and are bound by them; and that their assignees stand in the same position. (*Bishop*

v. *Empire Trans. Co.*, 33 Supr. 99 ; *S. C. at Special Term*, 48 How. 119; *Germania Fire Ins. Co.* v. *Mem. & C. R. R.*, 72 N. Y. 90; *Hill* v. *S. B. & N. Y. R. R.*, 73 id. 351; *Potter* v. *Sharp*, 24 Hun, 179, 180 ; *F. & M. Bk.* v. *Logan*, 74 N. Y. 568; *Belger* v. *Dinsmore*, 51 id. 166 ; *Kirkland* v. *Dinsmore*, 52 id. 171 ; *F. & M. Bk.* v. *Atkinson*, 74 id. 587; *Same* v. *Hazeltine*, 78 id. 104; *Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 154; *McEwen* v. *J. M. & I. R. R. Co.*, 33 Ind. 368; *Hazard* v. *Abel*, 15 Abb. [N. S.] 413.) Even if defendant is not protected by his contract alone, he is protected by it, together with the custom which was shown by the evidence ; and it was error not to find the custom as matter of fact, and the justification of the defendant as a matter of law.   (*Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 154 ; Hutchinson on Carriers, §§ 375, 382 ; *Ontario Bk.* v. *N. J. Steamb. Co.*, 59 N.Y. 510 ; *Richmond* v. *Un. Steamb. Co.*, 87 id. 240 ; *Sweet* v. *Barney*, 23 id. 335 ; *Van Santvoord* v. *St. John*, 6 Hill, 157; *Schroeder* v. *H. R. R. Co.*, 5 Duer, 55 ; *Gibson* v. *Culver*, 17 Wend. 305; Story on Bailm., § 543; *Blin* v. *Mayo*, 10 Vt. 56 ; *Huston* v. *Peters*, 1 Metc. [Ky.] 558 ; *Dixon* v. *Dunham*, 14 Ill. 324 ; *Hyde* v. *Trent. Nav. Co.*, 5 Vr. 389 ; *Galloway* v. *Hughes*, 1 Bailey, 553 ; *Chickering* v. *Fowler*, 4 Pick. 371; *Cope* v. *Cordova*, 1 Rawle, 203 ; *Garside* v. *Trent. Nav. Co.*, 4 Term Rep. 581 ; Angell on Carriers, § 311; *Dunbar* v. *B. & P. R. R. Co.*, 110 Mass. 26 ; *F. & M. Bk.* v. *C. Trans. Co.*, 16 Vt. 52 ; 18 id. 131 ; 23 id. 186 ; *Richardson* v. *Goddard*, 23 How. 28, 38; Edw. on Bailm., § 588; *Walls* v. *Bailey*, 49 N. Y. 464; *Kirchner* v. *Venus*, 12 Moore's P. C. 361 ; *Syers* v. *Jonas*, 2 Exch. 111; *McKinzee* v. *Dunlop*, 2 Jur. [N. S.] 957 ; *Fox* v. *Parker*, 44 Barb. 541 ; *Fawkes* v. *Lamb*, 8 Jur. [N. S.] 385 ; *Bottomly* v. *Forbes*, 6 Scott, 866 ; 5 Bing. N. C. 121 ; *Allen* v. *Sundins*, 1 H. & C. 123 ; 31 L. J. Exch. 307 ; *Broadwell* v. *Butler*, 6 McLean, 296 ; *Loveland* v. *Burke*, 128 Mass. 139 ; *N. Y. C. & H. R. R. R. Co.* v. *Standard Oil Co.*, 87 N. Y. 492.)   Chapter 326 of the Laws of 1858 and chapter 353 of the Laws of 1859 do not render the defendant liable for damages for conversion.

(*Shaw* v. *R. R. Co.*, 101 U. S. 557; *Collins* v. *Ralli*, 20 Hun, 246; 85 N. Y. 637; *Atkinson* v. *Abbott*, 11 East, 135; *Warren* v. *Mut. Ins. Co.*, 13 Pick. 518; *People* v. *Hislop*, 77 N. Y. 331; *Platz* v. *City of Cohoes*, 89 id. 221; *Wood* v. *Erie R. Co.*, 72 id. 198; *Robinson* v. *Batchelor*, 4 N. H. 40.) The plaintiffs have no cause of action, because the oil was delivered to their agent. (*Conard* v. *Atlantic Ins. Co.*, 1 Peters, 445.) The clause in some of the bills of lading which reads, "there to be delivered only upon the surrender of the bill of lading," formed no ground for an action for conversion. (*Barker* v. *Havens*, 17 Johns. 234; *Gould* v. *Oliver*, 2 Scott's N. R. 241; *Shepard* v. *De Bernales*, 13 East; 565; Abbott's Law Dict., title "Waive"; *Van Allen* v. *Farmers' Ins. Co.*, 4 Hun, 413; *Goodwin* v. *Mass. L. Ins. Co.*, 73 N. Y. 490; Bigelow on Fraud, 82; *Conkling* v. *King*, 10 N. Y. 440; *Goit* v. *Nat. Protection Ins. Co.*, 25 Barb. 189; *Robinson* v. *Memphis R. R. Co.*, 9 Fed. Rep. 129.) Delivery to the consignee was made through plaintiff's negligence. (*Twinam* v. *Swart*, 4 Lans. 263, 267; *Forbes* v. *B. & L. R. R. Co.*, 133 Mass. 157.)

*William G. Wilson* for respondents. The negotiability of a bill of lading does not in any measure depend upon its containing express terms of negotiability. The bill of lading is the symbol of the property, and its delivery, even without indorsement, operates as a symbolic delivery itself. (*Conard* v. *Atlantic Ins. Co.*, 1 Peters, 445; *Nathan* v. *Giles*, 5 Taunt. 558; *Bank of Rochester* v. *Jones*, 4 N. Y. 498, 500, 502, 503; *The City Bank* v. *R., W. & O. R. R. Co.*, 44 id. 139, 141; *Nat. Bk. of Green Bay* v. *Dearborn*, 115 Mass. 222; *Hathaway* v. *Haynes*, 124 id. 311.) The refusal of the defendant to deliver the merchandise to the plaintiffs upon demand, accompanied with the presentation of the bills of lading, was a conversion. (*Merchants' Bk.* v. *U. R. R. & T. Co.*, 69 N. Y. 373; *Newcomb* v. *B. & L. R. R.*, 115 Mass. 230; *Alderman* v. *Eastern R. R. Co.*, id. 233; *Libby* v. *Ingalls*, 124 id. 503; *Bank, etc.*, v. *Bissell*, 72 N. Y. 615; 2 R. S. [Banks Bros.' 6th

ed.] 230, § 6.) The evidence as to usage was inapplicable and inadmissible. (1 Sharswood's Blackstone, *76, note ; _Wheeler_ v. _Newbould_, 16 N. Y. 401 ; _Woodruff_ v. _Merchants' Bk._, 25 Wend. 675 ; _Vail_ v. _Rice_, 5 N. Y. 159 ; _Perkin_ v. _Franklyn Bk._, 21 Pick. 485 ; _Mech. Bk._ v. _Merch. Bk._, 6 Metc. 13 ; _Thompson_ v. _Riggs_, 5 Wall. 679 ; _Bradley_ v. _Wheeler_, 44 N. Y. 495.) The liability of the defendant is to be determined solely by the laws of this State. (_Jewell_ v. _Wright_, 30 N. Y. 264.)

FINCH, J. Whether before the statute (2 R. S. [6th ed.] 230), the difference in bills of lading between those drawn " to order " and those " billed straight " to the consignee alone, created a difference in the duty and right of the carrier in respect to delivery, we do not think it important to consider, since we agree with the courts below as to the decisive effect of the statute upon the facts in controversy. The defendant transported the oil under bills of lading, which constituted the contract between shipper and carrier, and served also as evidence of title, the transfer of which would transfer the property. That result would follow even though no words of negotiability were contained in the instrument, and its transfer, with an intention to pass the title, would give the holder an ownership of the property. By that process the plaintiffs became the owners of the oil, and, on showing that fact, by producing the bills of lading which were indorsed over to them by the consignee, they had a right to call upon the carrier for the property. The latter defends by showing a delivery to the consignee in ignorance of the plaintiff's right, but without the production and cancellation of the bills of lading. Such delivery was in accordance with the written words of the contract, but not, according to its terms, as modified by the express command of the statute. That forbids a delivery except upon the production and cancellation of the bills of lading, and interpolates into every such instrument that imperative condition, and makes such condition an element of the contract, as perfectly as if therein written. It gave to

the bills of lading, under which the oil was carried, this construction : that the carrier should deliver to the consignee provided he produced and canceled the bills of lading. The primary object of the statute was to insure delivery to the party actually entitled, and close the door upon opportunities for fraud resulting from delivery in ignorance of the true ownership. The carrier delivered to the consignee in disregard of the statutory prohibition, and that cannot be a good delivery which the law expressly forbids. Obedience to the statute would have prevented the injury which happened. The consignee had parted with the bills of lading and his consequent right to the property, and the delivery to him was to one not the owner and having no right to receive it. There is no hardship in the rule. If the carrier does not desire to obey its requirements he may stamp his bills of lading with the words "not negotiable." In that shape they warn the purchaser that the carrier will deliver to the consignee and not be bound by a transfer of the bills. But if he issues them without that warning he is bound to know that they may have passed into other hands and become the property of others than the consignee, and that his duty and his contract is to deliver to him who produces and cancels the evidence of title.

The appellant argues that the act does not forbid delivery to the consignee where that delivery is stipulated, but aims only to protect against " spent bills," or such as exist after delivery, and so are susceptible of a wrongful or fraudulent use. Doubtless the last was one of the evils sought to be prevented, but that purpose could only be effectually accomplished by forbidding a delivery, except accompanied by a cancellation of the bill. By no other mode could the existence of " spent bills " in a form capable of deception be prevented; for, if the carrier could deliver to the consignee without cancellation, the bill of lading would be left outstanding as a possible basis of fraud. The statute, therefore, does prohibit the delivery, except on the prescribed condition, and as the learned referee points out, a subsequent section makes that construction inevitable. (§ 8.) The prevention of mischief from "spent bills" was, however, not

the sole evil to be remedied, nor the only object sought to be accomplished. The business convenience of a safe and easy transfer of bills of lading, and the danger of leaving the title they represent at the mercy of the consignee, unless notice be given to the possibly unknown final carrier, and the importance of making the title they give secure for the purposes specified, were all subjects within the purview of the enactment, and the statute is too wise in its provisions, and too beneficent in its aim to be narrowed or weakened by any needless criticism.

The custom proved was immaterial. It could not repeal the statute, or serve as a shield for its violation.

The argument that under the contract between plaintiffs and the consignee the transfer of the bills of lading was not intended to vest title to the oil in them has no support in the facts. The findings are to the contrary, and fully supported by the evidence.

The contention that this action for the conversion is not maintainable, because the statute gives an action for damages to the party injured by a violation of its provisions, and such action only is contemplated, has no merit. A delivery to the wrong person, to one not entitled to the possession, is a conversion. (*Viner* v. *N. Y., etc., Steamship Co.*, 50 N. Y. 23, 24.) And this is so even if the act is done by mistake, and without a bad intent. The section of the statute referred to does not proceed upon the theory that no action could be maintained, except by its express authority. (§ 7.) It provides first for a punishment, criminally, by an indictment for a misdemeanor, and then lest that should be deemed the only consequence of a violation, it adds that the injured party may maintain "an action at law for all damages, immediate or consequential," which have resulted, whether the wrong-doer "shall have been convicted as hereinbefore mentioned or not." The form or character of the action is not dictated. Any one appropriate to the injury is contemplated.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.