damages for apprehended future injuries, he was obligated to estab-lish the same with a reasonable degree of certainty. Strohm v. Rail-road Co., 96 N. Y. 305; Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216. Substantially the same charge here excepted to was condemned in McKenna v. Railroad Co., 41 App. Div. 255, 58 N. Y. Supp. 462.

For these reasons, I think the judgment appealed from should be reversed, and a new trial ordered.

---

## MAIRS v. BALTIMORE & O. R. CO. et al.

(Supreme Court, Appellate Division, First Department.   June 6, 1902.)

1. CARRIERS—DELIVERY OF GOODS—OUTSTANDING BILL OF LADING—COMMON-LAW LIABILITY.

At common law, liability of a common carrier ceased on delivery of the goods to the owner or consignee, notwithstanding the fact that the bill of lading was not presented or surrendered; and, though the bill was afterwards sold to a third party for value, he could not recover from the company.[1]

2. SAME—STATUTORY LIABILITY.

Laws 1858, c. 326 (which itself related only to warehouse receipts), as amended by Laws 1859, c. 353, made a common carrier liable to a civil action if it delivered goods under a bill of lading not having the words "Not negotiable" plainly written or stamped thereon, without requiring the surrender of the bill. In 1886 the legislature repealed the acts re-ferred to, and in part re-enacted them in sections 629 and 633 of the Penal Code. Section 629, which was in all substantial respects a re-enactment of the law of 1858, omitted to provide for a civil action for damages, but merely made the person offending guilty of a misdemeanor. Section 633 was directed solely against the delivery of merchandise by a common carrier without requiring the surrender of the bill unless the words "Not negotiable" appeared on its face, and prescribed a certain punishment, violation thereof amounting to a felony. Held, that no right of civil action exists against a common carrier where it delivers merchan-dise to the consignee without requiring surrender of the bill of lading, though the words "Not negotiable" are not plainly stamped or writ-ten thereon, and though the bill is afterwards transferred to a third party for value and without notice.

3. FELONIES—WHAT CONSTITUTE.

Under Pen. Code, § 5, defining a "felony" as a crime which is or may be punishable either by death or imprisonment in the state's prison, it is not essential, to constitute a felony, that the offender must be punished by imprisonment in the state's prison, but it is sufficient if he may be so punished.

4. SAME—RIGHT OF CIVIL ACTION.

A statute which constitutes a given act a felony, and attaches a pun-ishment thereto, furnishes the exclusive remedy, and an offense against its provisions cannot be made the basis of a civil action.

5. COMMON CARRIERS—DELIVERY OF GOODS—OUTSTANDING BILL OF LADING—NEGLIGENCE.

A common carrier which issues a bill of lading not containing the words "or order" either before or after the name of the consignee, and reciting that, if the word "order" did not so appear, surrender of the bill would not be required, was not guilty of negligence in delivering the goods to the consignee without requiring the bill to be presented

---

[1] See Carriers, vol. 9, Cent. Dig. §§ 310, 311, 313.

or surrendered, though afterwards the words "or order" were forged by the holder, and the bill transferred to a third party for value and without notice.    Per Hatch and Laughlin, JJ.

O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Edwin H. Mairs against the Baltimore & Ohio Railroad Company and others.    From a judgment for plaintiff, and from an order denying a new trial, and also from an order denying a motion for reargument, and denying leave to defendant company to amend its answer, defendants appeal.    Judgment and order denying new trial reversed, order denying leave to amend affirmed, and appeal from order refusing a reargument dismissed.

The action was brought to recover damages resulting from the delivery by the defendant company of property without the surrender of the bill of lading, which, for a valuable consideration, had been transferred by the consignee to the plaintiff; the bill of lading not bearing upon its face the words "Not negotiable," as required by section 633 of the Penal Code.    The complaint averred that "by reason of such violation, and the unlawful acts of the defendants as above set forth, the plaintiff has sustained damage in the sum of $420."    There is no essential dispute as to the facts.    On December 12, 1896, the Norfolk & Western Railroad Company issued at Circleville, Ohio, the bill of lading in question for 200 barrels of Sagamore corn meal, consigned to James S. Day, New York City, and the goods were shipped via the Baltimore & Ohio Railroad, the defendant herein, who on January 14, 1897, notified the consignee of its arrival; and by his direction the same was delivered by the defendant to the steamship Madiana on the following day,—the 15th of January, 1897,—without the surrender or cancellation of the bill of lading.    The bill of lading did not have "plainly written or stamped upon its face" the words "Not negotiable."    It did contain a provision that, if the word "order" was placed before or after the name of the consignee, the surrender of the bill was required for delivery, but not otherwise, and that any alteration made without the special notation thereon of the agent should be void.    The bill did not bear the word "order" when issued, but before January 18, 1897, this had been inserted; and, as so inserted, the bill was handed over by the consignee to the plaintiff in consideration of a credit upon his account, and the delivery of other bills of lading formerly given as security.    In the summer of 1898 the plaintiff presented to the defendant the bill of lading,—the consignee having failed to meet his obligations,—and was then informed that the goods had been delivered, wherefore this action was brought to recover of the defendant the value of the goods.    Upon this evidence the court directed a verdict for the plaintiff, and from the judgment so entered the defendants appeal.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and LAUGHLIN, JJ.

Charles L. Kingsley, for appellants.

Howard E. White, for respondent.

HATCH, J.    The evidence in this case is without practical dispute, and in all essential features the questions involved are solely questions of law.

The rights and obligations of a common carrier at common law were essentially those of an insurer of the delivery of the goods to the owner or consignee at their point of destination.    The only matter which could be invoked by the carrier as an excuse for failure to deliver the goods to the consignee or owner was that loss was occasioned by the act of God or the public enemy.    It was early recog-

nized, however, that such liability might be modified by special contract made at the time of accepting the goods for carriage. Dorr v. Navigation Co., 11 N. Y. 485, 62 Am. Dec. 125; Steinweg v. Railroad Co., 43 N. Y. 123, 3 Am. Rep. 673; Blossom v. Dodd, 43 N. Y. 264, 3 Am. Rep. 701. Unless so limited by express agreement, the common-law liability of the carrier remained. The contract of carriage, however, was fully and completely discharged when the goods had been carried to their destination and delivered by the carrier to the party entitled to receive the same, and, having been so delivered, all liability ceased. Such delivery was not dependent upon the production and surrender of the bill of lading in order to protect the carrier; but when he had carried and delivered to the owner or consignee of the goods the property, the subject of the contract, liability upon the part of the carrier ceased, notwithstanding the fact that the bill of lading was not presented and surrendered at the time of the delivery of the goods. The only obligation which the common law placed upon the carrier, when he delivered the goods without the production of the bill, was to devolve upon the carrier the burden of showing that the delivery was in accordance with the directions contained in the bill. Furman v. Railroad Co., 106 N. Y. 579, 13 N. E. 587. Upon showing that such delivery was made to the person entitled to receive the same as provided in the bill, the carrier's liability ceased. Originally the common law did not take into consideration, or make exception in favor of, third persons who might become interested in the bill of lading by transactions had with the owner or consignee of the goods, and the carrier was protected in making his delivery to the person entitled to receive the same according to the bill, in the absence of any notice informing him of the interest of such third party. As bills of lading, in the course of the development of the business of the transportation and delivery of goods by carriers, became the representatives of the goods, and evidenced the property right therein, the business community made use of such bills as the media by which title thereto was transferred. Banking institutions and other persons accepted the same, advanced money thereon, and dealt therein under such circumstances as made it necessary, in the conduct of the business, to require that bills of lading representing the goods should have impressed upon them some of the features of negotiability; applying thereto substantially the same rule as applied to drafts, bills of exchange, and promissory notes, so far as such application was possible. Out of this condition arose a necessity for the protection of the business community, dealing upon the faith and credit of such bills. To that end, statutes were passed in many jurisdictions impressing upon such bills, to some extent, the quality of negotiable paper, and applying the rules of law applicable thereto, so far as the nature of the case permitted. In many of the states, including the state of New York, stringent statutory provisions were enacted for the protection of persons dealing therewith, and penalties were attached thereto, and imposed upon the carrier who failed in observance of such statutes. The course of legislation in this state will be the subject of examination hereafter. At common law, however, such contracts were not negotiable, nor assignable so as to give

to the assignee a right to enforce in his own name the conditions of the contract. Shaw v. Railroad Co., 101 U. S. 557, 25 L. Ed. 892. It was to meet this condition that these contracts were made negotiable, and the right to enforce by suit has been by various statutes given to the persons having the beneficial interest therein. It is evident, however, that the contract contained in a bill of lading differs in so many essential features from those applicable to negotiable instruments, under the law merchant, that only partial application of the rule is practicable. This is clearly pointed out in the authority last cited, and needs no further elaboration by us. Applying the rules of the common law to the contract in question, and considering the rights and liabilities of the parties thereto, under the rules it is apparent that, when the defendant delivered the goods to the owner named in the bill of lading, a good delivery was made, and the defendant was exonerated from all liability to any person on account thereof; for under such rule the plaintiff could obtain no right whatever against the defendant, as it had made compliance with every duty which the law imposed upon it, and delivered the property as was called for by the contract which it had made. It was competent, however, for the legislature to impose conditions upon the carrier in respect to the issuance of the bill of lading and delivery of the property by the carrier, and make the production of the bill of lading a condition precedent to the right of the carrier to make such a delivery, and to impose a penalty and punishment for failure to observe such requirement. The power in this respect is ample in the legislature to impose a penalty, to be enforced by civil action, or to make the act a crime punishable under the recognized forms of the criminal law,—either or both.

The legislature of this state in 1858 (chapter 326 of the Laws of that year) enacted, among other things, that warehouse receipts given for any goods, etc., might be transferred by indorsement thereof; and any person or persons to whom they should be so transferred was deemed to be, and was taken as, the owner of the goods, so far as to give validity to any pledge, lien, or transfer made or created in favor of such person or persons; and the act required that no property should be delivered except upon the surrender and cancellation of the original receipt, or the indorsement of such delivery thereon in case of partial delivery. All such receipts, which had the words "Not negotiable" plainly written or stamped on the face thereof, were made exempt from the provision of the act. The act further provided that a violation of such provision constituted a fraud punishable by indictment, and provided as punishment therefor a fine in any sum not exceeding $1,000, or imprisonment in a state's prison for a period not exceeding five years, or by both such fine and imprisonment. In addition thereto, every person aggrieved by any violation of the provisions of the act was authorized to maintain an action at law against the person or persons violating the provisions of such act, to recover all damages, immediate or consequential, which he or they may have sustained by reason of such violation, whether the person proceeded against had been convicted of fraud or not. This section was amended in 1859 (chap-

ter 353 of the Laws of that year), whereby section 6 of that act, to which we have made reference, was amended by making the provisions thereof applicable to bills of lading, and to all persons or corporations that may issue such bills, of any kind or description. The act as amended was required to be construed as including a forwarder and bills of lading, as though the same were mentioned in every section of the act to which the amendment applied. By virtue of the provisions of this act, it was held that where a carrier had delivered goods under a bill of lading which did not have the words "Not negotiable" plainly written or stamped thereon, without requiring the delivery and surrender of the bill at the time of the delivery, was liable in an action for damages sustained by the person to whom the bill of lading had been delivered. Colgate v. Pennsylvania Co., 102 N. Y. 120, 6 N. E. 114. The facts in that case are quite similar in one respect to the conditions which appear in the present case. Therein the bills which were issued did not have either stamped or written upon their face the words "Not negotiable," but the goods represented thereby were delivered to the person entitled thereto, as named in the bill, but without the production or surrender of the bill of lading. Such bills became, therefore, there as here, what are denominated "spent bills." There were, however, in that case, a number of bills of lading; and a part of the property represented thereby was delivered according to the terms of the bill, but without the production and surrender of the bill at the time of delivery, before the transfer of the same to the plaintiffs. The general term held (31 Hun, 297) that, as to the property delivered before the transfer of the bill to the plaintiffs, an action for conversion of the goods would not lie, and this for the reason that the goods were in fact delivered to the person entitled to receive the same; that, therefore, as to the "spent bill," the action could not be maintained in conversion, but that the plaintiff was remitted, in his right to recover, to the provisions of the statute awarding damages by reason of a delivery without the production and surrender of the bill to any person suffering therefrom. Such rule was also announced by National Commercial Bank v. Lackawanna Transp. Co., 59 App. Div. 270, 69 N. Y. Supp. 396. The action in the present case is brought, not for a conversion of the property, but to recover damages by virtue of the violation of a duty imposed by the statute. The complaint therefore recognizes that this action can only be maintained upon such theory, for in the present case the goods were delivered to the consignee named in the bill of lading at a time when he was in possession of the same and entitled to receive the property; consequently the carrier could not be held liable for conversion in delivering the goods to the person entitled at the time to receive the same. Every obligation then resting upon the carrier was performed in accordance with the terms of the contract, and the only point at which it failed was in not requiring the production and surrender of the bill at the time of the delivery. It was at this act that the statute, among other things, was aimed, and its construction in the Colgate Case has pointed out some of the evils which it sought to prevent. It is

evident, however, that the only right of action which an individual could have under such circumstances is by virtue of the provisions of the statute. As we have indicated, and shall hereafter further point out, the right of action did not exist at common law, or by virtue of any other provision of law. Had this act remained in force, no question could arise but that the defendant was guilty of a violation of its terms, and could be proceeded against criminally and civilly.

In 1886 the legislature repealed these provisions of the statute, and in part re-enacted the same in sections 629 and 633 of the Penal Code. By virtue of this act of the legislature these provisions have become a substantive part of the criminal law of the state. The right of action averred in the present complaint, and the language conferring it, contained in the Laws of 1858 and 1859, are omitted from the sections of the Penal Code to which we have directed attention. The question, therefore, which this case presents, is, has the right of action survived this repeal and revision of the law?

If it needed express statutory authority for the maintenance of a civil action for damages sustained for this breach of duty, then, clearly, such right of action has been taken away, for not a vestige of the provisions which conferred authority in this respect is found in the provisions of the Penal Code. The amendment or revision of the act of 1858 was therefore something more than a mere change of phraseology, for the reason that it omitted the language which authorized the maintenance of an action; and, if the right of its maintenance depended thereon, then the intent of the legislature is clearly manifested to take it away, and it would necessarily fall for the reason that it had not been continued. In the Colgate Case it was asserted that the right of action therein involved could be maintained as an action of conversion, quite independent of statutory provisions, but this was for the reason that the defendant in that case had been guilty of a conversion of the goods. Damages arising out of a "spent bill" were not the subject of consideration therein. They could not be, as the decision below had eliminated from the case such question, and the court of appeals nowhere intimates that such disposition of the matter was improper; and, of course, it follows that the action of conversion for the delivery of the goods subsequent to the transfer of the bill of lading, as it was based upon conversion, pure and simple, could be maintained. The right existed to maintain such an action in conversion at common law. Section 629 of the Penal Code, which is in all substantial respects a re-enactment of the provisions of the law of 1858, so far as it assumes to cover the subject, makes the person offending against its provisions guilty of a misdemeanor and punishable by imprisonment for not exceeding one year, or by fine not exceeding $1,000, or by both. Section 633 is directed solely against the act of delivery of merchandise by a carrier without the production and surrender of the bill at the time of delivery, unless the words "Not negotiable" are plainly written or stamped upon its face; the punishment therefor being by imprisonment not exceeding one year, or by fine not exceeding $1,000, or by both. The latter section does not define the act as being a misdemeanor. It is therefore

a felony. The omission to define the grade of the offense specified in this section is peculiarly significant. The first-cited section in terms declares the offense therein to be a misdemeanor. The latter section leaves out such declaration. By the provisions of section 3 of the Penal Code, a crime is defined as an act or omission forbidden by law, and punishable upon conviction in a certain manner. By section 4, crimes are divided into—First, a felony; second, a misdemeanor. Section 5 defines a felony to be a crime which is or may be punishable either by death or imprisonment in a state's prison. Any other crime is a misdemeanor. In People v. Lyon, 99 N. Y. 210, 1 N. E. 673, it was held that, to constitute a felony, it was not essential that the offender must be punished by imprisonment in a state's prison, but that it is sufficient so to constitute if he may be so punished. The maximum punishment is the test. And by section 703 of the Penal Code authority is given to punish in a state's prison for the period of one year. The only limitation is that it may not be less than such time. The penalty attached, therefore, to the commission of the offense defined in section 633, constitutes the same a felony, as the imprisonment therein provided for may be one year, and therefore the offender may be sent to the state's prison. It is said in the Colgate Case that the punishment provided for the criminal act of section 7 of the act of 1858 was a misdemeanor, but the provision, in terms, is that the offender became thereby subject to imprisonment "in one of the state's prisons of this state for not exceeding five years"; and under the law as it was announced by the court of appeals in the case of People v. Lyon, supra, and now embodied in the Penal Code, the authority conferred to inflict such penalty constituted the offense a felony, where it was not otherwise designated in terms in the law defining the offense. It has always been the law, both in this country and in England, that a statute which constitutes a given act a felonious crime, and attaches a punishment thereto, furnishes the exclusive remedy for the wrong, and an offense against its provisions may not be made the basis of a civil action for the recovery of damages. Insurance Co. v. Smith, 6 Q. B. Div. 561; Bradlaugh v. Clarke, 8 App. Cas. 354. In the last case it was held that where a penalty is created by statute, and nothing is said as to who may recover, and it is not created for the benefit of the party aggrieved, the offense is not against the individual, but belongs alone to the crown, and the crown alone may maintain a suit to recover it. But it was never doubted that no right of action was given for a breach of duty by an offender where its violation was made a felony. Under such circumstances, whatever private wrong may exist becomes merged in the felony, and the punishment therefor is exclusive. Although, where the act admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other (Code Civ. Proc. § 1899), yet the civil remedy is not created by, and does not flow out of, the criminal statute. Smith v. Lockwood, 13 Barb. 209; Foley v. Phelps, 1 App. Div. 553, 37 N. Y. Supp. 471; Smith v. Lewis, 3 Johns. 157, 3 Am. Dec. 469. And this rule is also applicable to penal statutes where the offense does not assume to determine that the prohibited acts constitute a crime. Almy v. Harris, 5 Johns. 175; Cornell v.

'Turnpike Co., 25 Wend. 365; Jessup v. Carnegie, 80 N. Y. 441, 36 Am. Rep. 643; Endl. Interp. St. § 329 et seq.

It is clear, therefore, that the cause of action provided by the statute of 1858 for the act charged in the complaint finds no place in the present law of the state, and did not survive in the repeal and revision of such act; and as the offense, under the present provisions of the Penal Code, is a felony, no right of civil action for the recovery of damages exists for the commission of the offense therein defined. This is a sufficient answer to the claim of the plaintiff. There seems to be some basis, however, for the claim that the provision of section 633 of the Penal Code is authority for the maintenance of a civil action to recover damages for its violation. Such is the statement of one authority. Burnham v. Seed Co., 142 N. Y. 169–172, 36 N. E. 889. The court therein, as authority for this proposition, cites the Colgate Case, supra, and Bank v. Kelly, 57 N. Y. 34. We have already sufficiently discussed the first of these cases, and have shown, as we think, that the right of action therein sustained existed at common law. So far as it rested upon the statute, it has been swept away by subsequent legislation, and section 633 of the Penal Code does not furnish a basis for such an action. In the other cited case the question was not involved, as the court therein simply held that the indorsement and delivery of a bill of lading, as collateral security, to a bank, placed the bank in the position of a mortgagee in possession. There was no question of a "spent bill" in the case, or of delivery of property to the rightful person, having possession of the bill, without surrendering the same. The remark in the Burnham Case was not essential to its decision, and seems to have been clearly obiter. We do not understand that the court made examination of the subject, and of the mutation which the law had undergone since the decision in the Colgate Case. It is not, therefore, an authority in the premises. The statute giving the right of action having been repealed, and there having been substituted therefor a statute making the act a felony, and omitting any provision authorizing the civil remedy, it necessarily follows that no right of action remains. At common law, we have already seen, the obligation of the carrier was fulfilled when it delivered the goods to the person entitled thereto, and no right of action survived to a third person, although he subsequently came into possession of the bill after the delivery of the goods. No such right was recognized at common law in such third person. Consequently there was no wrong committed against him by such delivery which was cognizable at the common law. Negligence cannot be predicated upon a violation of this statute, for the reason that at common law the defendant was not bound to recognize any right that might exist in a third party either at the time of or subsequent to the delivery of the goods, if in fact at the time of such delivery it was made to the rightful owner. The right of action, therefore, was purely statutory, and had no other foundation. It would not be contended that, if the statute and constitutional provision giving a right of action to the next of

kin·for negligently· causing. the death of a person were repealed,. any right of action would survive. If the right of action were taken away, and there was substituted in its place a statute which made the act of negligently causing such death a felony, such act, within well-settled authority, would furnish the exclusive remedy, and the cause of action based upon negligence would be wiped out. A violation of the statute thereafter, although caused by negligence, would give no right of action whatever, as the basis therefor did not exist as a common-law right, and the statutory authority which alone supported it is swept away. The two cases are exactly parallel, as violation of the criminal law in cases of felony furnishes no basis for the maintenance of this action, founded in negligence, or otherwise. The only authority that can restore the right to maintain such an action is the legislature.

If it be assumed that an action based upon negligence could have been maintained as a common-law right, it seems clear that it could only be predicated upon the negligence of the defendant as the moving cause of the injury. It would be going very far indeed to say that such an action could be maintained where the injury would and could not be inflicted except by the intervention of a criminal act by a third party. In the present case the "spent bill" could not have been negotiated, had not the holder thereof forged the words "Order of and notify." The language of the contract contained in the bill gave notice that the carrier could deliver without the production of the bill unless these or words of similar import appeared thereon. With the addition of these words the carrier had nothing to do. The act placing them upon the bill was a forgery, and such act alone induced the plaintiff to take the bill. The mere failure to deliver the goods without the production of the bill worked no harm to any one; nor could it so work harm, as no one would take it, or be authorized to take it, thereafter, and thereby assert a liability against the defendant. It is said that the bill was outstanding, and to so leave it was a wrongful act of the defendant, as thereby a fraud could be perpetrated. As well might it be said that the theft and negotiation of a promissory note, never delivered, gave a right of action in the holder for negligence, because the drawer of the note had filled it up, and thereby enabled a thief to become possessed of it. The negligence which will sustain such an action must rest upon the doing of a harmful act, either by omitting to do something, or by taking affirmative action. The intervening agency of a criminal act, where without it no wrong to any one would be done, cannot be urged as an element upon which to predicate liability. In the present case the plaintiff testifies that he would not have taken the bill had not the words appeared upon the bill, and, as these words were forged by the holder of it, it would seem that no action predicated upon negligence could be maintained, if otherwise it might have been.

For these and the reasons already assigned it follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. The order denying leave to the defendant to amend should be affirmed, and the appeal

from the order denying the motion for reargument should be dismissed.

LAUGHLIN, J., concurs.  VAN BRUNT, P. J., concurs in result.

O'BRIEN, J.  I dissent from the conclusion reached by the majority of the court, and, in view of the commercial importance of the case, deem it proper that my reasons therefor should be given.

Where goods covered by a bill of lading have been delivered, the bill of lading, if thereafter outstanding, is denominated a "spent bill." It has many times been held that a spent bill is not effective or operative for the transfer of title to property therein described. Accordingly, in National Commercial Bank v. Lackawanna Transp. Co., 59 App. Div. 271, 69 N. Y. Supp. 396, wherein recovery was sought on a spent bill based upon the theory of conversion, it was held that such an action would not lie, because the functions of the bill ceased upon the delivery of the goods, and it could not thereafter operate to vest the title of the goods in the subsequent transferee, and that "the liability, if any, of the carrier to the subsequent transferee for the former's failing to take up the bill of lading when it delivered the goods, cannot be enforced in an action based solely upon the theory of conversion of the goods." It was therein sought to raise the question which is here directly presented, as to whether the leaving of such a bill of lading outstanding after delivery of the goods, in direct violation of section 633 of the Penal Code, would create a cause of action in favor of one to whom the bill was transferred for value, for the damages caused thereby. Although the court referred to the question as a serious one, it refused to pass upon it, for the reason that it was not properly presented by the pleadings. In the present case the complaint is not framed, nor is relief demanded, upon the theory of conversion, but it is sought to charge the defendant with the damages sustained for its breach of duty or neglect in not complying with the provisions of law. As we shall hereafter point out, this is not a statutory action, but it is based upon a violation of the common-law duty or obligation resting upon the defendant,—and of which the statute is evidence,—of observing care to prevent fraud and imposition on third persons. The precise question presented for our determination, therefore, may be thus stated: Does a cause of action upon the theory of a breach of duty or for neglect arise in favor of one who has received a spent bill of lading for a valuable consideration, as against a person or corporation delivering the goods covered by the bill, which does not bear the words "Not negotiable," as required by the statute, without the surrender of such bill? Or, differently formulated: Can a recovery upon the theory of negligence or breach of duty be had against a common carrier on a commercial bill of lading, as distinguishable from a mere freight receipt, for delivering goods without a surrender of the bill, in favor of the person to whom it is subsequently transferred for a valuable consideration?

It is conceded that section 633 of the Penal Code was directly aimed at preventing what has in this instance happened, namely, the delivery of the goods without the surrender of the bill; the bill not containing the words "Not negotiable." Prior to the enactment of this section of the Penal Code, the legislature sought to avert the evils resulting from such a practice by chapter 326 of the Laws of 1858, which was, however, repealed by chapter 593 of the Laws of 1886. Under the law of 1858, in addition to the prohibition similar to that contained now in the Penal Code (section 633), there was the further provision that every person aggrieved might maintain an action at law against those violating the act to recover all damages which he or they may have been caused by reason of such violation. An instance of recovery under this statute will be found in the case of Colgate v. Pennsylvania Co., reported in 31 Hun, 297, and on appeal in 102 N. Y. 120, 6 N. E. 114: The additional provision to which we have referred having been repealed, the statutory action fell with it, but this by no means took away the remedy which at common law a person might have against one who, through negligence or violation of duty, had caused damage. The right to maintain such an action has been recognized since the repeal of the statute of 1858, and since section 633 of the Penal Code went into effect. Thus in First Nat. Bank v. New York Cent. & H. R. R. Co., 85 Hun, 160, 32 N. Y. Supp. 604, a bill of lading similar to that here involved was before the court, and, upon evidence that section 633 of the Penal Code had been violated, a recovery was sustained. As therein said:

"The bill of lading in this case did not have written or stamped on its face the words 'Not negotiable,' and therefore the delivery of the property by the agents of the defendant without its surrender and cancellation was unlawful. In 1 Kent, Comm. 467, it is said, if a statute inflicts a penalty for doing an act, the penalty implies a prohibition, and the thing is unlawful, though there be no prohibiting words in the statute."

It is to be noted that First Nat. Bank v. New York Cent. & H. R. R. Co., supra, was not an action upon a spent bill; the bill there having been transferred, and thus the title having passed before the goods were delivered. Hence the theory of the action was conversion, which, as already pointed out, could not be maintained upon a spent bill. That case, however, is authority for the proposition that the repeal of the provision as to maintaining an action which was given by the law of 1858 did not take away all right of a person injured to civil redress as against one violating the statute, and thereby guilty of a wrongful act. In that case, also, will be found a discussion of the claim there and here made of laches against the plaintiff, by reason of delay in presenting the bill of lading and making demand of defendant, which we think sufficiently answers the argument which is again presented to us on that subject.

Although there is undoubtedly a distinction to be observed as to the status occupied by one who obtains a bill before the delivery of goods and one who obtains it after delivery, since these circumstances affect the form of action, there is no distinction in principle as to the basis of the recovery predicated upon neglect or failure to observe a

duty imposed by statute. That this is so appears from the Colgate Case, 102 N. Y. 120, 6 N. E. 114, wherein, referring to the law of 1858, the court says of spent bills:

"Doubtless the last was one of the evils sought to be prevented. * * * By no other method could the existence of spent bills in a form capable of deception be prevented, for, if the carrier could deliver to the consignee without cancellation, the bill of lading would be left outsanding, as a possible basis for fraud. * * * The prevention of mischief from spent bills was, however, not the sole object * * * sought to be accomplished."

. It will be noticed that the appellants' argument in that case proceeded from an opposite standpoint; the insistence there being that the statute was aimed exclusively at spent bills, and not at bills which were transferred before the goods were delivered, and that with reference to the latter an action would not lie. Although a decision under the former law (chapter 326, Laws 1858), that case is authority for the following propositions: (1) That the effect of the statute is to incorporate into every bill of lading the statutory condition, and make it an element of the contract; (2) that the remedy of the transferee, where the carrier has delivered the property in violation of statute, is not confined to an action for damages given by the statute; and (3) that the intent of the statute was not to dictate the character or form of the action, but that any action appropriate to the injury was contemplated.

The Penal Code (section 633), just as the former law of 1858, was intended to provide against the possibility of what has here occurred, by requiring that the bills should be surrendered, or else that they should be marked "Not negotiable." We think, therefore, that the change in the law which omitted the provision giving a cause of action for violation of the statute does not affect the right to maintain an action for damages. It still remains a statute for the protection of the individual, and to prevent fraud by making use of spent bills; and upon such facts the right of action existed at common law. Cooley, Torts (2d Ed.) 788, 790. Nor is the delivery of the goods before the transfer to the plaintiff of the bill any excuse or defense to the action. The violation of the statute is conceded, and damage was sustained, and we think the liability thereupon attached.

Our view that punishment under the Penal Code is not the only liability incurred is enforced by what was said in Burnham v. Seed Co., 142 N. Y. 172, 36 N. E. 889, where, in speaking of the consequences that would result from the wrongful delivery of goods covered by a bill of lading, the court, referring to the plaintiff there, said:

"If before the bank's debt was paid he had wrongfully delivered it [the cargo] to the defendant, he would have been criminally liable under section 633 of the Penal Code, and the bank could have proceeded against him in a civil action for damages. Our conclusion upon the law, therefore, is that the repeal of the provision in the act of 1858 did not take away the plaintiff's right, in an appropriate action, to recover damages sustained by the delivery of the goods without requiring the surrender of the bill of lading."

Nor can sections 629 and 633 of the Penal Code be construed as limited to the person who makes delivery of the goods. These sections, in terms, designate a person; but the provision, as is perfectly evident from the language which follows, embraces a corporation as

76 N.Y.S.—54

well as an individual. Formerly the Penal Code, in section 718, subd. 14, defined the term "person" to include a corporation or joint association unless the language, either expressly or by necessary implication, limited it to a natural person. Pen. Code 1881. The revisors of the Code left out this definition, as appears by an examination of section 718 of the present Penal Code. Such fact, however, does not change the law. It was the rule at common law that a corporation might be included in the word "person." 1 Bish. Cr. Law (4th Ed.) § 243; People v. Utica Ins. Co., 15 Johns. 358, 381, 382, 8 Am. Rep. 243. Section 13 of the Penal Code provides for the punishment of a corporation where imprisonment could be inflicted upon a natural person for the same act. It would, moreover, be a forced and unnatural construction to limit the provisions of the Penal Code to a natural person. If so construed, it would grant immunity to a corporation or association for acts which the statute aims to prevent, and which, in view of existing conditions, could scarcely be done except by a corporation. The business is in the hands of corporations who can only act by agents, and to say that these provisions of the statute were alone directed against the person acting for the corporation would defeat the whole purpose of the statute.

Many subsidiary questions are urged by the appellant, the more important of which may be briefly considered.

It appeared that after the bill was issued·and delivered to the consignee, and before its transfer to the plaintiff, the word "order" was written before the name of the consignee; and upon this he hinged the argument that the plaintiff could not recover, because his title was established under a bill of lading which was proven to have been changed, altered, or forged; and it is urged that, under the eighth clause of the bill, this rendered it void. The answer, however, appears from a reading of the clause itself, which only makes the alteration or erasure void, and not the entire bill of lading. The bill, therefore, assuming the word "order" was forged, was still outstanding as a bill of lading, and is to be considered according to its terms, rejecting the forgery. The ninth clause provided that, "if the word 'order' is written * * * immediately before or after the name of the party to whose order the property is consigned, * * * the surrender of this bill, * * * properly indorsed, shall be required before delivery of the property"; otherwise "the property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading." Although this clause permitted by its terms a delivery to the consignee without the production of the bill, it was ineffectual for that purpose, for there were necessarily incorporated in ·it the provisions of the statute, which commanded that the property, if the bill was not marked "Not negotiable," should be delivered only upon the production and surrender of the bill. Colgate's Case, 102 N. Y. 120, 6 N. E. 114. Of course, if knowledge of the fact that the bill had been altered after it had been issued by the carrier was brought home to the plaintiff before he took it, a different question would be presented. He testified that the words "Order of and notify" had been inserted before the name of the consignee,

and he believed that they were so inserted by him; but neither this testimony, nor any other in the case, shows that knowledge of the alteration had been brought home to him, nor would it justify the inference that he knew that the bill had been altered at the time he took it. On the contrary, the evidence and the inferences are just the other way; he stating that he did not know of the alteration until after he presented the bill to the defendant.

With respect to the further contention as to the alleged error committed by the learned trial judge in refusing to permit an amendment of the answer setting up that section 633 of the Penal Code is unconstitutional, if we consider it as a question in the case, it is only necessary to say that the statute in no way attempts to hinder or interfere with interstate commerce and transportation, but merely provides a wholesome rule regulating the delivery of goods within this state. It is not, therefore, in contravention of, or opposed to, the constitution and laws of the United States.

The other minor questions urged I regard as without merit. My conclusion, therefore, upon the entire case as it was presented to the learned trial judge at the close of all the evidence,—there being no disputed facts, and hence no question for the jury,—is that, on motion made, he properly directed a verdict for the plaintiff; and the judgment appealed from should accordingly be affirmed.