(137 App. Div. 140.)

## MANNY v. WILSON.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. BAILMENT (§ 21*)—PERSONAL PROPERTY—REDELIVERY TO OWNER.

    A. & Co., having pledged an automobile chassis to plaintiff for a loan, obtained it from plaintiff to deliver to defendant to have a body placed thereon, plaintiff surrendering the chassis on condition that A. & Co. obtain from defendant and deliver to plaintiff a receipt therefor. Defendant executed a nonnegotiable receipt for the chassis to A. & Co. without notice of plaintiff's interest, which receipt was indorsed by A. & Co. to plaintiff, after which defendant delivered the chassis and body to A. & Co. without surrender of the receipt. *Held*, that defendant, having delivered the chassis to A. & Co., from whom he received it, was *not* liable to plaintiff for conversion.

    [Ed. Note.—For other cases, see Bailment, Dec. Dig. § 21.*]

2. BAILMENT (§ 23*)—RECEIPTS—NEGOTIABILITY—"NEGOTIABLE INSTRUMENT."

    An instrument acknowledging receipt of an automobile chassis to be delivered only on return of the receipt properly indorsed was not negotiable, a "negotiable instrument" being a written promise or request for the payment of money to order or to bearer, the word "indorsed" as there used not being construed as if used with reference to commercial paper.

    [Ed. Note.—For other cases, see Bailment, Dec. Dig. § 23.*

    For other definitions, see Words and Phrases, vol. 5, pp. 4767–4770; vol. 8, p. 7731.]

3. BAILMENT (§ 23*)—DELIVERY OF PERSONAL PROPERTY—STATUTES—"DEPOS-
ITARY"—"PERSON."

   Pen. Code, § 633, provides that a person mentioned in section 629, who
delivers to another any merchandise for which a bill of lading, receipt,
or voucher has been issued, unless such receipt or voucher bears on its
face the words "not negotiable," or unless such receipt is surrendered to
be canceled at the time of delivery is punishable, etc. The "person" men-
tioned in section 629 is defined to be one carrying on the business of a
warehouseman, wharfinger, or other depositary of property who issues
any receipt, bill of lading, or voucher, etc. *Held*, that such sections were
inapplicable to a manufacturer of automobile bodies to whom a chassis
was delivered to be fitted with a body only, and not for storage; such
manufacturer not being a "depositary" within section 629.

   [Ed. Note.—For other cases, see Bailment, Dec. Dig. § 23.*

   For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335;
vol. 8, p. 7752; vol. 2, p. 2000.]

   Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Walter B. Manny against Daniel T. Wilson. Judgment
for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

John H. Corwin, for appellant.
Frederick R. Kellogg, for respondent.

MILLER, J. The facts in this case are undisputed. The plaintiff
loaned to Archer & Co. $5,500, taking the latter's promissory note
therefor, dated May 9, 1907, and as security therefor a bill of sale of
an automobile chassis, and giving back an agreement to resell it to the
borrower for the amount of the loan at maturity of the note. The
defendant is engaged in the business of manufacturing bodies for au-
tomobiles and of storing automobiles and carriages for hire. With
the consent of the plaintiff, Archer & Co. delivered the chassis to the
defendant to have a body put on it. Such consent, however, was con-
ditioned upon Archer & Co. obtaining from the defendant and deliver-
ing to the plaintiff a receipt. The defendant received the chassis on
May 15, 1907, and gave the following receipt therefor:

                                                        "May 15, 1907.
   "Received from Archer & Company Hotchkiss Chassis No. 1011, to be de-
livered only on return of this receipt properly endorsed.
                              "[Signed]    Flandrau & Company,
                                           "Keyes & Wilson."

Archer & Co. indorsed said receipt as follows:

"Deliver to the order of Walter B. Manny.
     "[Signed]                                    Archer & Company."

—and delivered it to the plaintiff. Two days after the receipt of the
chassis, the defendant returned it to Archer & Co. with the body
thereon, but without requiring the surrender of the receipt. On De-
cember 27, 1907, relying upon the receipt, the plaintiff extended the
time of payment of his loan to Archer & Co. On February 10, 1908,
the plaintiff presented the receipt to the defendant, and demanded de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

livery of the chassis. Having exhausted his remedies against Archer & Co., the plaintiff seeks in this action to compel the defendant to make good his loss. The complaint alleged substantially all the facts above recited, except the return of the chassis to Archer & Co. by the defendant, and that:

"The defendant refused and failed to deliver said automobile chassis to the plaintiff, and still fails and neglects to deliver, but has wrongfully and negligently converted the same to his own use. * * * That the failure of the defendant to deliver said chassis to the plaintiff on demand and according to the terms of the receipt set forth in paragraph fifth hereof and his continued failure to deliver said automobile chassis to the plaintiff, and his wrongful conversion thereof, has deprived the plaintiff of his security for the said loan, and has damaged the plaintiff in the sum of five thousand ($5,000) dollars."

The trial court held that the defendant was not guilty of conversion, that the receipt delivered by the defendant to Archer & Co. was nonnegotiable, but directed a verdict in favor of the plaintiff on the authority of Mairs v. Baltimore & Ohio R. R. Co., 175 N. Y. 409, 67 N. E. 901, on the ground that the defendant had delivered the chassis to Archer & Co. without requiring the surrender of the receipt, although it did not have the words "not negotiable" plainly written or stamped thereon, in violation of section 633 of the Penal Code, in force at the time. The defendant had no knowledge nor notice of the transactions between the plaintiff and Archer & Co., or that the plaintiff had any claim on the chassis.

Unless the receipt was negotiable, there can be no doubt that the defendant was not guilty of conversion. The defendant never asserted any claim or right of possession in hostility to the plaintiff. He merely received an article from the person in possession thereof for the purpose of doing work upon it, and, when that was done, returned it to the one from whom he received it. The demand by the plaintiff was made long after, and it seems unnecessary to cite authority upon the proposition that conversion cannot be based upon inability to comply with a demand under those circumstances.

The learned trial court correctly held that the receipt was nonnegotiable. Negotiable instruments are written promises or requests for the payment of money to order or bearer. Bills of lading and warehouse receipts have come to possess attributes of negotiability from the custom to transfer them in place of actually delivering the property. For convenience, a symbolical delivery is made; but it has not become customary thus to deal with receipts like that involved in this suit. The respondent cites many cases dealing with negotiable instruments, bills of lading, and warehouse receipts to show that the words "to be delivered only on return of this receipt properly indorsed" made the receipt in this case negotiable; but obviously such cases have no application. This receipt does not purport to be a warehouse receipt. For what purpose the defendant received the chassis, or to whom he was to return it, is not stated. Presumptively he was to return it to the one from whom he had received it; but, according to the terms of the receipt, he was only to do that upon the return of the receipt properly indorsed. The delivery of the indorsed receipt was to constitute the defendant's proof of delivery of the chassis. The word "indorsed"

as thus used cannot be construed as it would be if used with reference to commercial paper. If the receipt be treated as an executory contract, then it was competent for the parties to the contract to vary it or to dispense with the condition of delivery. I think that no one issuing such a receipt under the circumstances disclosed in this case would ever imagine that he had put a negotiable instrument in circulation. The usual words of negotiability "to order or bearer" are not found in this receipt. To be sure, in the case of negotiable, or so-called quasi negotiable, instruments, any words importing an intention that the instrument shall be negotiable suffice. But in the case of a mere receipt, given by one who receives an article to do work upon it, there should be at least plain words of negotiability to make the receipt negotiable, even assuming that such words would have that effect, which we by no means decide.

I think that no one reading this complaint would suppose that the defendant was sued for delivering merchandise, for which a receipt had been issued without the words "not negotiable" plainly written or stamped thereon. To be sure, the facts are pleaded; but there is no averment of the delivery of the chassis by the defendant. The defendant is sued for refusing to deliver on demand, not for delivering to the wrong person. The pleader characterized the action in unmistakable terms as one for conversion. In such an action the plaintiff is entitled to certain provisional remedies. After judgment, he may have an execution against the person. If the rule that the judgment must be secundum allegata et probata still has any vitality, the plaintiff should not be permitted to recover upon such a complaint without proving a conversion.

Moreover, the case is not within section 633 of the Penal Code in force at the time of the transaction in suit. That section provides:

"A person mentioned in section 629, who delivers to another any merchandise for which a bill of lading, receipt or voucher has been issued, unless such receipt or voucher bears upon its face the words 'not negotiable,' plainly written or stamped, or unless such receipt is surrendered to be cancelled at the time of such delivery, * * * is punishable by imprisonment not exceeding one year, or by a fine not exceeding one thousand dollars, or by both."

The person mentioned in said section 629, so far as applicable to this case, is one "carrying on the business of a warehouseman, wharfinger or other depository (sic) of property, who issues any receipt, bill of lading or other voucher," etc. The trial court ruled, and the respondent contends, that the defendant was a depositary within the meaning of the statute. The fact that the defendant engaged in the business of storing automobiles for hire is immaterial. The plaintiff knew that the chassis was not deposited with the defendant for storage, and there was nothing in the receipt indicating that it was. He received it for the sole purpose of putting a body upon it. He did not become a warehouseman with respect to it, and the fact that, in addition to his business as a manufacturer of automobile bodies, he was also in the business of storing automobiles for hire, is immaterial. The rights and obligations of the parties with respect to this particular transaction must be decided according to what the transaction actually was, not what it might have been. The defendant was not the de-

positary of the chassis within the meaning of the statute. In the first place, the statute shows upon its face that it was intended to reach a particular evil, to wit, frauds perpetrated by the holders·of bills of lading, warehouse receipts, and the like. Under the first subdivision of section 629, particular agents or officers of specified transportation companies are enumerated. The second subdivision specifies warehousemen and wharfingers, followed by the general term "other depository." All the internal evidence tends to show that the words "other depository" were intended to mean "other like depositary." There is nothing to show the contrary, and, of course, the general rule of construction should be followed. The·one who receives an article of merchandise for the sole purpose of doing work upon it is not a depositary like unto a warehouseman or wharfinger.

Research of counsel, supplemented by our own, has failed to disclose an authority decisive of this case. Bucher v. Commonwealth, 103 Pa. 528, cited by the appellant, supports the conclusion we have reached. The defendant is liable, if at all, in this case for committing a crime which has resulted in injury to the plaintiff. The case cited is direct authority for the proposition that no crime was committed; and if, instead of the judgment for damages, we had before us for review a judgment, convicting the defendant of the crime, we should have no hesitation in declaring that the penal statute alleged to have been violated could not be so construed as to embrace the defendant within its terms. In relying upon the receipt, the plaintiff made a mistake of law, but he cannot hold the defendant responsible for that.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and LAUGHLIN and SCOTT, JJ., concur.

CLARKE, J. (dissenting). The plaintiff loaned Archer & Co. $5,500 May 9, 1907. He received a note and also a paper, which is apparently a bill of sale:

"Walter B. Manny. Esq. 1 Hotchkiss Chassis, No. 1011, Type O, six-cylinders, $5,500, Archer & Co. Paid May 9, 1907. Per Chas. Tutschulte, Cash'r. Present location Custom House. Selling price, U. S. A. $9,000, for Morgan B. Kent, Boston, body by Flandrau."

Accompanying this was this paper:

"Agreement—Archer & Company & Walter B. Manny—Manny hereby agrees to sell the Hotchkiss 'Chassis' No. 1011, Type O. with all equipments complete, which said W. B. Manny bought from Archer & Co. on May 9, at $5,500.00, it being understood and agreed that said W. B. Manny will sell to Archer & Co. and that Archer & Co. agree to repurchase from said W. B. Manny the above named car at the same price named and at and upon a date not later than three months from this date. It is further agreed by said Manny that the time of this repurchase which Archer & Co. agree to make shall not extend beyond ten days after completion of the car with its body and all equipments, and in case of undue and unavoidable delay, this repurchase shall be made as per attached note within three months."

He received also from Archer & Co. a paper dated May 10th, inclosing certificates covering insurance to the amount of $13,500 on three specified Hotchkiss chassis, "with reference to body builders' receipts, as

soon as cars are delivered we will mail same to you." He also received this paper:

"May 15, 1907. Received from Archer & Company Hotchkiss chassis No. 1011 to be delivered only on return of this receipt properly endorsed. Flandrau & Co., Keyes & Wilson."
Indorsed: "Deliver to the order of Walter B. Manny, Archer & Co."

The plaintiff testified:

"After I received this receipt, I did not put my agreement with Archer & Co. on the records of the county clerk of this county.
"Q. In omitting to do so did you rely on this receipt? A. Absolutely. I did not after receiving that receipt make any effort before February 10, 1908, to get physical possession of this chassis in my own hands.
"Q. In omitting to make any such effort did you rely upon this receipt? A. I did."

He further testified that he thereafter received a request from Archer & Co. to extend the time on the original note and took a new note dated December 27, 1907, for $5,000, having received $500 on the original note with interest to that date. "Q. In taking this note and receiving part payment of the original note, did you rely upon the receipt which is in evidence in this case? A. Absolutely." Thereafter he called at the office of Keyes & Wilson, and called for this chassis, and showed this receipt. "Mr. Wilson had some one look up the matter, and, when he got the report on it, he turned white, and said: 'My God, Mr. Manny, I delivered that chassis last summer.'" Under cross-examination he said that he never saw Mr. Wilson or had any communication with him until February 10th, and that he never notified him of his relations with Archer & Co. prior to the time he demanded the chassis, which was about nine months from the time he originally got the receipt. "It was represented to me that this chassis had been contracted to be sold to Mr. Kent of Boston when I loaned the money on it, and, when I made my demand, I was informed by Mr. Wilson that he had prior to the demand delivered the chassis."

This judgment was based upon section 629 of the Penal Code:

"A person who, * * * (2) carrying on the business of a warehouseman, wharfinger or other depository of property who issues any receipt, bill of lading or other voucher for merchandise of any kind, which has not been actually received upon the premises of such person and is not under his absolute control at the time of issuing such instrument, whether such instrument is issued to a person as being the owner of such merchandise or as security of any indebtedness, is guilty of a misdemeanor."

Section 632:

"A person mentioned in sections 628 and 629 who sells or pledges any merchandise for which a bill of lading, receipt or voucher, has been issued by him without the consent in writing thereto of the person holding such receipt, bill or voucher, is punishable by imprisonment. * * *"

Section 633:

"A person mentioned in section 629, who delivers to a person any merchandise for which a bill of lading, receipt or voucher has been issued, unless such receipt or voucher bears the words 'not negotiable' plainly written or stamped, or unless such receipt is surrendered to be cancelled at the time of such delivery * * * is punishable by imprisonment. * * *"

The complaint alleges that the defendant is doing business under the name and style of Keyes & Wilson, and also under the name and style of Flandrau & Co., with his principal place of business at 406 Broome street, in the city of New York, and is engaged in a general carriage business, making bodies for automobiles and storing automobiles and carriages for hire; and it is conceded that the defendant was engaged as alleged in the complaint.

It was proved that judgment was duly recovered by Manny against Archer & Co. and execution returned unsatisfied. In Burnham v. Cape Vincent Seed Co., 142 N. Y. 169, 36 N. E. 889, the court said:

"In the case at bar the plaintiff held the cargo of peas as security for the Ontario Bank, and, if before the bank's debt was paid he had wrongfully delivered it to the defendant, he would have been criminally liable under section 633 of the Penal Code, and the bank could have proceeded against him in a civil action for damage. Colgate v. Pennsylvania Co., 102 N. Y. 120 [6 N. E. 114]; First National Bank of Cincinnati v. Kelly, 57 N. Y. 34."

In Mairs v. Baltimore & Ohio R. R. Co., 175 N. Y. 409, 67 N. E. 901, the court, alluding to sections 629 and 633 of the Penal Code, said:

"These provisions of the Code were taken from chapter 326 of the Laws of 1858, as amended by chapter 353 of the Laws of 1859, and chapter 440 of the Laws of 1866. Under the statute, all persons aggrieved by a violation of the act were given the right to maintain an action at law against the violators thereof to recover the damages suffered; but, when some of the provisions of that act were transferred to the Penal Code, that pertaining to the civil remedy was omitted and disappeared from our statute law by a repeal of the statute. At common law the failure to take up a bill of lading would not furnish cause for action, and it follows that the only civil liability remaining exists by reason of the provisions of the Penal Code, which makes the omission unlawful and penal."

After citing the provisions of the statutes, the court proceeds:

"There, however, can be no recovery unless damages to the plaintiff resulted from the illegal act. Where the Legislature prohibits or requires the doing of any act and prescribes the punishment which shall be inflicted for a violation of its mandate, the punishment furnishes the exclusive remedy for the wrong, so far as the public is concerned, and the act cannot be made the basis of a civil action by an individual for the recovery of damages, unless he has been injured in his person or property and the damages suffered are the direct and proximate result of the illegal act. In this case the defendants negligently omitted to take up the bill of lading when they delivered the goods upon the order of the consignee. The bill of lading did not have the words 'not negotiable' indorsed upon its face, and therefore the defendants may be technically guilty of a violation of the statute, but the bill of lading, in fact, is not negotiable, and under the law merchant the defendants would not have been required to take up the bill had it not been for the provision of the statute. * * *"

I think this judgment ought to be sustained. I do not think that the fact that the defendant was to do some work on this machine avoids the liability. He issued a "receipt" or "order for merchandise." He was a "warehouseman * * * or other depository of property." He gave a receipt for some purpose, and its peculiar wording, "To be delivered only on return of this receipt, properly endorsed," must be construed to mean what is said: Ordinarily, as between dealer and manufacturer, no such instrument as this passes. It was to identify and secure this particular machine in specie, and this was so well un-

derstood that it was indorsed and delivered over to Manny as a muniment of title, and as security for repayment of his loan. It seems to me that the transaction comes fairly within the general purport of the law to secure third persons advancing money or making payments upon the faith of warehouse receipts in their supposed collateral. The plaintiff advanced his money, and upon the faith of this receipt extended time of payment, and it was by reason of the defendant's carelessness and disregard of the statute and of the obligations that he had himself taken when he gave the receipt that the damage has accrued.

I am in favor of an affirmance.